OPINION OF THE COURT
Allan L. Winick, J.
Defendant has been convicted of the crime of criminal sale *812 of a controlled substance in the third degree upon his plea of guilty.
Prior to sentence, the People filed a prior felony information alleging that the defendant was convicted of the crime of robbery in the third degree, a class D felony pursuant to his plea of guilty on June 12, 1984 in the County Court, Schenectady County.
The defendant now controverts the information and contends that the plea was taken in violation of his constitutional rights.
The existence of the previous conviction is not controverted or disputed, and, to this extent, the People have complied with CPL 400.21 (7) (a).
Thus, the burden is shifted to the defendant to prove that the conviction was unconstitutionally obtained (CPL 400.21 [7] [b]; People v Harris, 61 NY2d 9, 15).
The key to this issue is whether the defendant knowingly, voluntarily and intelligently relinquished his rights upon his guilty plea. (People v Harris, supra, p 17.) In Chaipis v State Liq. Auth. (44 NY2d 57, 63-64) Chief Judge Breitel observed: "It is a truism that a guilty plea, which waives even many constitutional rights, must be taken only when the defendant has knowledge and understanding of the consequences of the plea * * * If the plea be coerced, or if defendant’s knowledge of its consequences be not explored sufficiently, the plea may be subject to vacation on proper and timely motion”.
Since the parties herein have agreed that this court’s determination shall be based upon the plea minutes of June 12, 1984, the court has examined those minutes and will quote certain parts verbatim, these parts highlighting the issue raised by the defendant.
At the outset of the plea proceeding, the Assistant District Attorney stated to the court:
"It’s my understanding that the defendant does have some problems with the English language. His wife is here today before the Court at this time. It is also my understanding that his wife is fluent in both English and Spanish and she is prepared to act today as an interpreter with respect to these matters.
"If that is a correct recitation of the understanding between Attorney Cuevas, between myself and defense counsel, I would ask that the document be executed by the defendant in the presence of the Court.
*813 "mr. cuevas: I would state that Mr. Bolster has accurately stated my understanding as far as the waiver and the plea bargain negotiations and the plea that the defendant is to enter into.”
Soon thereafter the following occurred:
"the court: Now, how much of a language difficulty do we have here? You understand some English?
"the defendant: Some.
"the court: You’re going to interpret for him?
"MRS. MEDRANO: YeS.”
The court made no further inquiries with respect to the defendant’s wife’s knowledge of the English and Spanish languages, only asking Mrs. Medrano "You’re his wife?”, to which she responded "Yes”.
The court then administered to Mrs. Medrano the following oath:
"the court: Will you raise your right hand, please? Do you swear that you will well and truly interpret the questions and answers that are put to this defendant and reply [to] them in English to the Court?
"MRS. MEDRANO: I do.”
The court then went on to take the plea.
There then ensued a colloquy between the court and Mrs. Medrano, who "interpreted” for the defendant and she gave responses to the court.
The allocution was, at best, threadbare and did not contain traditional questions concerning the privilege against compulsory self-incrimination, the right to confront accusers, and whether defendant waived them. After he was asked how he pleaded and he said "guilty”, defendant was advised of his right to a jury trial and asked whether he was aware that he was pleading guilty to a crime, a felony, and that he could be put in jail. The defendant, through his wife, gave affirmative answers to the court’s questions about the crime, noting that the theft was of a chain, not money, as the court had stated.
The defendant was then asked if he wanted to talk to his lawyer before his plea was accepted and was given the right to do so, and he did.
The court then accepted his plea of guilty without again asking him how he pleaded.
It is apparent, therefore, that at the time the defendant *814 announced that he was pleading "guilty”, he had been advised only that he had a right to a trial by jury. No other advisement had been made.
Since the decision of the Court of Appeals in Harris (supra), it has been clear that a plea is not constitutionally infirm simply because there was no detailed articulation and waiver of the three rights mentioned in Boykin v Alabama (395 US 238). As stated in Harris (supra, p 19): "The clear import of Boykin and its progeny is that the Trial Judge has a vital responsibility 'to make sure [that the accused] has full understanding of what the plea connotes and of its consequence’ (Boykin v Alabama, supra, at p 244), not that a new procedural requirement has been imposed, mandating the Trial Judge’s ritualistic recitation of the rights waived upon a guilty plea.”
The key issue is whether this defendant knowingly, voluntarily, and intelligently relinquished his rights.
The fact that the plea of guilty followed after the court had only advised him of his right to trial by jury might alone indicate that the defendant did not knowingly, voluntarily and intelligently waive his rights, but, even if not conclusive on this issue, in the light of what actually transpired, there is one element of this proceeding which leads ineluctably to the conclusion that it cannot stand constitutional muster.
That element is the use of defendant’s wife as the interpreter.
The use of interpreters is governed by Judiciary Law article 12. Section 386 provides for the appointment of an official court interpreter by the County Judge and the District Attorney, except in the Counties of New York, Kings and Queens, and in any other county in which such appointment is governed by local law.
Such interpreter is a public official who must subscribe to an oath of office as prescribed in Public Officers Law § 10 and NY Constitution, article XIII, § 1.
Judiciary Law § 387 provides for the temporary appointment of an interpreter by the court "[i]f the services of an interpreter be required in any court and there be no unemployed official interpreter to act therein”. Such interpreter "shall before entering upon his duties file with the clerk of the court the constitutional oath of office.”
It is apparent that the County Judge recognized the need for an interpreter but did not ascertain whether the official *815 interpreter was otherwise employed. The failure to appoint an interpreter where one is needed renders the conviction constitutionally defective. (People v Johnny P., 112 Misc 2d 647, 650.) "Clearly, a defendant who interposes the defense in issue is entitled to all rights incidental to court proceedings such as are possessed by any other litigant. The right to comprehend judicial proceedings is an absolute one (People v Ramos, 25 AD2d 791; United States ex rel. Negron v State of New York, 310 F Supp 1304, affd 434 F2d 386) and carries with it the concomitant right to have an interpreter furnished by the court (United States v Sanchez, 483 F2d 1052, cert den 415 US 991). Failure to provide an interpreter where one is needed renders the trial constitutionally defective (United States ex rel. Negron v State of New York, supra). On the other hand, even where it is demonstrated that one comprehends the language used in court fairly well, error is not committed by permitting him to testify through an interpreter (United States v Cheung Kin Ping, 555 F2d 1069).”
There was a failure to administer the constitutional oath in this case. Public Officers Law § 10 requires every public officer, and an interpreter is a public officer, to subscribe and file such oath. Judiciary Law § 387 is specific on that point.
It has even been held that a failure to take and file the oath creates a vacancy in the office by operation of law. (1984 Opns Atty Gen [Inf Opns] 97.)
Thus, Mrs. Medrano was not legally qualified to act as an interpreter.
But what is more to the point in determining whether the defendant knowingly, voluntarily and intelligently waived his constitutional rights, or even understood them, is that no inquiry was made by anyone, including the court, concerning Mrs. Medrano’s ability to translate English into Spanish and Spanish into English. Did she understand the proceedings?
The presence of a lawyer for defendant insured nothing in this regard and there is no indication of what his knowledge of the Spanish language was.
The procedure set forth in the Judiciary Law for the appointment of interpreters, at least subliminally, requires the appointment of someone who is known to have knowledge of the language. Mrs. Medrano’s simple response of "I do” to the court’s administering an oath, says little to answer this question. The assurance of adequate language skill lies in having an official interpreter and the implication of the law is that there be such assurance.
*816 In conclusion, this court finds that the defendant has sustained his burden of alleging and proving the facts underlying the claim that his prior conviction was unconstitutionally obtained (CPL 400.21 [7] [b]; People v Harris, 61 NY2d, at p 15).
A conviction obtained in violation of one’s constitutional rights may not be used to enhance punishment for another offense. (Bargett v Texas, 389 US 109, 115.)
The defendant will be sentenced as a first felony offender.