THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v IGOR
TURKENICH, Appellant.

Second Department, June 13, 1988

## APPEARANCES OF COUNSEL

*Freda S. Nisnewitz* for appellant.

*Elizabeth Holtzman, District Attorney (Barbara D. Underwood, Janet M. Berk* and *Sally Wasserman* of counsel), for respondent.

## OPINION OF THE COURT

THOMPSON, J. P.

■ After a jury trial, the defendant was convicted of manslaughter in the first degree under Penal Law § 125.20 (1). The defendant's conviction was largely ensured by the introduction at trial of inculpatory statements made by him to law enforcement authorities. His midtrial motion to suppress these statements was denied by Criminal Term, after a hearing. On appeal, the defendant's principal contention is that Criminal Term erred in allowing his statements to be admitted into evidence because they were procured by means of a custodial interrogation and without any prior advisement of his *Miranda* rights *(Miranda v Arizona,* 384 US 436). For the reasons which follow, we agree with the defendant that he was in custody at the time he made his incriminating statements. The failure to advise the defendant of his *Miranda* rights prior thereto rendered the statements inadmissible. Accordingly, Criminal Term erred in denying the defendant's suppression motion. We therefore reverse the judgment of conviction and order a new trial.

The relevant facts are as follows: On November 8, 1981, the body of 56-year-old Zinaida Turkenich, a recent Russian immigrant who was crippled from childhood from the effects of

polio, was found lying face up on a couch in the apartment in Brooklyn she had shared with her son, the defendant Igor Turkenich. Her body was discovered by Daniel Devlin, a social worker employed by the New York City Department of Social Services who had been assigned to the Turkenich case after it was referred to his agency by the New York Association for New Americans (hereinafter NYANA), a group that aids Russian immigrants in making the transition to life in this country. An autopsy revealed the victim's death was caused by a skull fracture in combination with older as well as more recent contusions of the face, skull, arms, back and legs.

New York City Police Detective Pasquale Tennariello launched an investigation into the homicide. In the course of his investigation, Detective Tennariello sought to interview the defendant whom he learned had been confined in the psychiatric ward of Metropolitan Hospital after having been picked up by the police for causing a disturbance in front of the Russian Embassy. On November 14, 1981, Detective Tennariello and his partner went to Metropolitan Hospital for the purpose of questioning the defendant concerning his mother's death. The defendant, who spoke only Russian, was brought into a room at the hospital in which three doctors, Detective Tennariello and his partner, Detective Michaels, were seated. One of the doctors, Dr. Gabay, served as the translator. Detective Tennariello testified at the suppression hearing that he wanted to advise the defendant of his rights under *Miranda v Arizona (supra)* because he believed the defendant might become a subject of his investigation. Upon being informed of the detective's intention, Dr. Davidson, who was present in the interview room, stated that Detective Tennariello should not "bother" to inform the defendant of his rights because he lacked the capacity to understand them. Notwithstanding the defendant's diminished mental capacity, Detective Tennariello proceeded to interrogate the defendant for about 20 to 30 minutes without first administering *Miranda* warnings. During this questioning, the defendant confessed that on October 30, 1981, the last time he had seen his mother, he hit her with her crutch following an argument regarding his mother's refusal to let him return to Russia. Detective Tennariello further testified that at times during the questioning the defendant denied hitting his mother. Many of the defendant's answers to the police inquiries were incoherent. The defendant was not arrested at the conclusion of the initial inquiry. He was later transferred to Manhattan

Psychiatric Center, and escaped from that facility. Consequently, the defendant's arrest was not effected until November 10, 1982.

The defendant sought suppression of any statements made by him to Detective Tennariello at the hospital without the benefit of the *Miranda* warnings. Following a *Huntley* hearing held during the trial, but outside the presence of the jury *(see, People v Huntley,* 15 NY2d 72, *on remand* 46 Misc 2d 209, *affd* 27 AD2d 904, *affd* 21 NY2d 659)*, Criminal Term granted the motion to suppress finding that the statements were the product of an interrogation which was essentially custodial and without the benefit of *Miranda* warnings. The court further found that exclusion of the statements was mandated by the defendant's mental condition and the absence of any facts from which to determine the accuracy of the Russian translation of Detective Tennariello's questions and the defendant's responses. Upon those facts, Criminal Term ruled that the prosecution failed to sustain its burden of proving the voluntariness of the defendant's statements beyond a reasonable doubt.

Subsequently, the trial court permitted reargument of its suppression ruling. In a complete reversal of its prior determination, Criminal Term found that the defendant was not in custody at the time he spoke to Detective Tennariello, thereby obviating the need for the administration of the *Miranda* warnings.

On appeal, the defendant's position is that the conditions under which he was questioned constituted the practical equivalent of custodial interrogation and, therefore, the statements he made without being informed of his *Miranda* rights were inadmissible. We are compelled to conclude, contrary to Criminal Term's ruling upon reargument, that the defendant's statements were the product of a custodial interrogation and that, since he was not given *Miranda* warnings prior thereto, his statements must be suppressed.

Implicit in our inquiry is the principle that only statements made as a result of custodial interrogation must be preceded by *Miranda* warnings. Neither formal arrest nor mere investigatory focus is the hallmark of whether interrogation is custodial. Rather, an individual is deemed to be in custody when he has been "deprived of his freedom of action in any significant way" *(Miranda v Arizona, supra,* at 444). In deciding whether the accused was in custody prior to being interro-

gated, the subjective beliefs of the accused are not determinative. The appropriate test is "what a reasonable [person], innocent of any crime, would have thought had he been in the [accused's] position" *(People v Yukl,* 25 NY2d 585, 589, *mot to amend remittitur denied* 26 NY2d 845, 883, *cert denied* 400 US 851; *Matter of Kwok T.,* 43 NY2d 213, 219-220). Generally, the determination of whether an interrogation is custodial is an issue of fact *(People v Williamson,* 51 NY2d 801; *People v McIntyre,* 138 AD2d 634). As such, the suppression court's findings are afforded great deference and should not be disturbed unless they are unsupported by the evidence *(see, People v McIntyre, supra; People v Oates,* 104 AD2d 907).

Applying these principles to the case before us, we conclude that the hospital interrogation was conducted in an atmosphere and in physical surroundings which were inherently coercive. Therefore the interrogation was custodial in nature. It follows then that the defendant could not be questioned until he received preinterrogation *Miranda* warnings. The defendant's confinement at Metropolitan Hospital was apparently pursuant to an involuntary commitment order *(see,* Mental Hygiene Law § 9.41). As Criminal Term recognized, although the defendant was not confined to a prison ward, he was not free to leave the hospital. Thus, the *Miranda* language defining custody as the deprivation of an accused's freedom in any significant way is clearly relevant. The circumstances of the interrogation may be said to have substantially affected the defendant's " 'will to resist and compel[led] him to speak where he would not otherwise [have done] so freely' " *(People v Rodney P.,* 21 NY2d 1, 11; *see also, People v Phinney,* 22 NY2d 288). Also noteworthy in determining the issue of custody is the fact that the defendant had apparently become the focus of the police investigation as reflected in Detective Tennariello's avowed desire to administer the *Miranda* warnings prior to questioning. The inherently coercive atmosphere was accentuated by the defendant's recent immigration to the United States from a country with a vastly different political structure and by his inability to speak or understand the language of his inquisitor.

Our conclusion that these facts preclude the admission into evidence of the defendant's inculpatory statements is fully supported by the decision of the United States Court of Appeals for the District of Columbia Circuit in the case of *United States v Robinson* (439 F2d 553), upon which the

defendant herein relies. In *Robinson* the defendant, an inmate of a mental hospital, was questioned by the police without being given *Miranda* warnings in connection with an investigation of the brutal killing of a female employee of the hospital in which he was confined. The police investigation had focused upon the defendant in that case because of the similarity of the crime under investigation with an earlier rape with which the defendant was charged and upon which he was confined to the mental hospital under a verdict of not guilty by reason of insanity. At the initial police inquiry, the defendant conceded his presence at or near the crime scene at the time of its commission, after being told by the interrogating officer that two witnesses had seen him near the crime scene. Thereafter, the defendant made incriminating statements to two doctors at the hospital also without being advised of his *Miranda* rights. The Court of Appeals determined that the inculpatory statements were the product of an interrogation which was essentially custodial and, therefore, the defendant's statements made before he was advised of his rights were involuntary and inadmissible. The court also ruled inadmissible the incriminating statements made by the defendant to the doctors under the rule excluding involuntary confessions. With respect to the police interrogation, the *Robinson* court found that "[t]he situation of [the defendant] during the interrogation cannot in any rational manner be distinguished from custodial interrogation" *(United States v Robinson, supra,* at 560). The defendant was also found to have been in custody when he made his statements to his doctors. No factual distinction was drawn under the circumstances between the statements made to the doctors and those made to the police. Comparing the situation under which the statements were made to the facts of the *Miranda* decision, the court reasoned: "While the confession in *Miranda* was elicited during interrogation in police custody, appellant's position was even more conducive to compulsion than Miranda's. As the testimony indicates, though he was competent to understand what he was doing, he was a mental patient who was clearly no less subject to [the doctor's] influence than Miranda was to the influence of the police" *(United States v Robinson, supra,* at 560-561).

Similarly, in *People v Tanner* (31 AD2d 148) the Appellate Division, First Department, held inadmissible a confession obtained without prior *Miranda* warnings from the accused while he was confined to a hospital bed undergoing intrave-

nous feeding and physically incapable of movement. Although the defendant was restrained by factors independent of the police activity, the *Tanner* court held the interrogation to be custodial.

The People's reliance on certain decisions of this and other jurisdictions to support their position that the defendant was not in custody for *Miranda* purposes when questioned by the police is misplaced *(see, People v Phinney,* 22 NY2d 288, *supra; People v Romano,* 139 Ill App 3d 999, 487 NE2d 785; *State v Hoskins,* 292 Minn 111, 193 NW2d 802; *State v Fields,* 294 NW2d 404 [ND]). The only relevant similarity between the *Phinney, Romano, Hoskins* and *Fields* cases and the facts of the instant matter is that each case involved interrogation of an accused in a hospital environment. Unlike the situation at bar, the defendant in each of those cases was admitted to the hospital strictly for medical treatment of a physical condition. No question was raised concerning the mental capacity of the individual defendants nor was the atmosphere of the respective inquiries rendered coercive by the presence of the treating physicians and the police. In any event, as noted, the instant matter involves special factors peculiar to this case involving as it does a foreign-born, non-English-speaking defendant with an undisputed mental illness. Those characteristics rendered the defendant herein particularly vulnerable to the coercive pressures of a police interrogation. Under these circumstances, the police should have taken greater care to ensure that the rights of the suspect were protected. We believe that an innocent man in the defendant's position reasonably would have believed that he was in custody and, accordingly, the statements made without preinterrogation warnings must be suppressed.

We conclude for an additional reason that the defendant's statements could not be validly admitted into evidence. If the defendant's mental state was such that he could not understand the nature of the *Miranda* warnings, it would necessarily follow that the defendant lacked the mental capacity to understand the nature and consequences of his statements to the police. Moreover, in his testimony Detective Tennariello stated that the defendant made exculpatory as well as inculpatory statements and some of the defendant's responses were unintelligible. The evidence indicates that the nature of the defendant's mental condition was such as to render his inculpatory statements involuntary *(cf., People v Schompert,* 19 NY2d 300, *cert denied* 389 US 874). Further

impacting upon the voluntariness of the defendant's admissions is the failure of the police prior to questioning to ensure that the doctor who served as the interpreter was possessed of adequate skill in the Russian language. The evidence fails to demonstrate that the translations provided were sufficient to give the defendant an understanding of the police inquiry *(cf., People v Medrano,* 133 Misc 2d 811).

Accordingly, the judgment of conviction should be reversed, on the law and the facts, the motion to suppress the defendant's statements should be granted, and a new trial should be ordered.

In light of our determination, we need not reach the defendant's claims of trial error.

BROWN, EIBER and SULLIVAN, JJ., concur.

Ordered that the judgment is reversed, on the law and the facts, the motion is granted, and a new trial is ordered.