OPINION OF THE COURT
John R. Schwartz, J.
This case presents the court with a question of first impression in New York criminal and civil law: should the court allow a speech therapist to interpret for a potential witness who suffers from a severe case of cerebral palsy?*
*248 In this prosecution for petit larceny (Penal Law § 155.25), the complainant and chief witness for the People suffers from cerebral palsy, a severely debilitating disease which has rendered him incapable of normal verbal communication. While the witness can hear and comprehend with no apparent difficulty, the disease has so affected his speech that most verbal utterances are incomprehensible to the untrained ear.
Mindful that the unaided testimony of this witness would be meaningless and thus wholly inadequate to prove their case, the People seek the court’s permission to allow a speech therapist to interpret the witness’s responses at the trial. The defendant objects to such a procedure.
Thus, the court is left with the task of deciding whether it has the authority to allow a speech therapist to interpret for the witness in the first instance, and if so, whether this particular therapist is qualified to interpret.
I
Section 387 of the Judiciary Law confers general power on the court to appoint interpreters on a temporary basis where it finds the services of an interpreter are required. This section is normally understood to refer to interpreters for foreign-speaking witnesses and parties (for instance, English to Spanish, Spanish to English, etc.). The only section of the law that deals with a physical disability is section 390 of the Judiciary Law which confers power on the court to appoint a sign language interpreter for a deaf party or witness in any legal proceeding. However, the Judiciary Law, or for that matter, any other law, does not address the issue with respect to any other physical or mental disability.
Here the physical and mental disability is cerebral palsy, which is a loose descriptive term that applies to a number of nonprogressive motor disorders resulting from gestational or perinatal damage and characterized by an impairment of voluntary movement. It affects the ability to move some or all extremities and in many cases, the ability to speak. (See generally, Hardy, Cerebral Palsy [1983].) It is also associated with mental retardation but the mental retardation often appears to be more severe than it actually is due to difficulties *249 in self-expression (Hardy, Cerebral Palsy, at 4-6). Here, the 52-year-old victim has cerebral palsy in one of its severest forms. He is permanently confined to a wheelchair. He has very limited arm and hardly any finger movement. He appears to be mentally retarded and his responses come across as incomprehensible mumbles.
The Assistant District Attorney argues, however, that the potential witness is very aware of the court proceeding, that he is eager to testify, can comprehend questions, and, with assistance of a speech therapist, his apparent mumbles can be translated into understandable language. Therefore, he should have his day in court.
The defendant on the other hand argues that such a procedure would violate his due process rights guaranteed him under the United States Constitution and the New York State Constitution in that he could not effectively cross-examine this witness, thus depriving the defendant of a fair trial. The defendant further argues that the court does not have the authority under the law to allow such an unusual procedure to take place, either by statute or case law precedent.
Just because a procedure is unusual does not mean that it should not take place in a courtroom. The courts today should make every effort to open their door to all who seek to come through them. We can no longer take the attitude that if it has not been done in the past, it should not be done in the future. The age-old stereotyping of people with physical or mental disabilities or a combination of both should be dis-, pensed with as soon as possible. The courts have come out of the dark ages with respect to the treatment of the deaf and hearing impaired, and we should likewise do so with respect to other physical and mental disabilities (see generally, People v Guzman, 125 Misc 2d 457, where the court allowed a deaf petit juror to sit with the assistance of a sign language interpreter). If the power to appoint an interpreter in cases of an unusual disability does not exist directly by statute, then it does by statutory interpretation (McKinney’s Cons Laws of NY, Book 1, Statutes § 71).
In People v Johnny P. (112 Misc 2d 647), the court made such a statutory interpretation. Noting that section 390 of the Judiciary Law authorizes the appointment of sign language interpreters, the court determined that the statutory prerogative to make temporary appointments under Judiciary Law § 387 was not limited to instances of language barriers, but *250 extends as well to other disabilities. In that case, the court appointed a psychiatric social worker to interpret at the defendant’s plea allocution, where defendant’s mental illness rendered his thought processes "so convoluted that only one who has both medical and forensic familiarity with them can properly communicate with [him]” (People v Johnny P., supra, at 651).
While People v Johnny P. (supra) placed emphasis on the criminal defendant’s constitutional rights to understand the proceedings before him, the court sees no reason why the holding in that case should extend only to the accused in a criminal proceeding. The Judiciary Law makes no such distinctions, for section 387 allows a court to appoint an interpreter "[i]f the services of an interpreter be required”, while section 390 specifically encompasses all parties and all witnesses in legal proceedings of any nature.
This court likewise holds that the authority to appoint interpreters under Judiciary Law § 387 extends beyond language interpreters and applies to interpreters for witnesses or parties with physical and mental disabilities.
II
A separate issue is whether the therapist here is qualified to act as an interpreter for this witness. Whenever a court makes a temporary appointment pursuant to Judiciary Law § 387, it must inquire on the record as to the interpreter’s qualifications. (People v Medrano, 133 Misc 2d 811.)
While it is important to open the doors of the courtroom to this witness, the victim of a crime, the court is equally mindful of the defendant’s right to due process of law under the United States and New York State Constitutions which includes the right to a meaningful cross-examination of this witness. The witness must not only be able to comprehend the questions put to him on direct and cross-examination, but he must also be able to answer them in a meaningful way. The interpreter cannot be allowed to summarize the meaning of his responses to questions. She must be able to give the court a word-for-word repetition of the witness’s responses.
Initially the court notes that the therapist is not acting as a true interpreter, for the witness communicates in the English language (see, People v Guzman, 125 Misc 2d 457, supra). In Guzman (at 458), which involved the rights of a deaf person to sit as a juror, the court differentiated the role of the true interpreter from that of other signers for the hearing im *251 paired, based on whether the signing system was true English or in fact constituted a separate language when it stated: "American Sign Language (ASL) is a separate language from English with its own grammar and syntax. The person who signs with a deaf person in ASL is, therefore, a translator or interpreter just as any foreign language interpreter serves that function in a court proceeding. [The juror] spoke, however, in signed English, which is not a separate language — it is English in a different form. Thus, the 'interpreter’ was not translating or interpreting but merely transmitting.”
Because the sign language interpreter was merely transmitting to the juror, the court allowed the juror to sit.
Like the English language signer in Guzman (supra) the therapist here is merely a transmitter for the witness, translating his response word for word. Thus, whether she is qualified depends on her expertise and ability to understand the witness.
At a pretrial hearing, the speech therapist stated that she is a graduate student in speech and language pathology at Nazareth College, Rochester, New York. She holds a bachelor’s degree in Communicative Disorders and Sciences. She has had extensive course work in the speech communication area, including graduate level work in augmented communications of the severely disabled, which teaches techniques for communication with aphasic individuals, including those suffering from cerebral palsy.
The speech therapist has clinical and volunteer experience at the Buffalo Speech and Hearing Center and Autistic Services, Inc. She testified that she has worked with many patients who suffer communication problems identical to those of this witness. She further testified that she met the witness prior to trial, and was able to understand him. In response to the court’s inquiry, she testified that any translation would be a literal, word-for-word repetition of the witness’s responses. She would neither alter the meaning or syntax of his answers nor fill in words for the witness.
Therefore, the court is satisfied that, through the services of this speech therapist, the court has the benefit of the witness’s responses exactly as he meant them to be heard and understood. Based on the therapist’s training and expertise, and on her demonstrated ability to comprehend the witness’s verbal responses, the court finds she is a qualified interpreter, and will allow the witness to testify through the interpreter.

 While the Second Department and the Court of Appeals had an opportunity to address a similar issue in People v Thompson (28 NY2d 616, affg 34 AD2d 561) they did not because the defendant was acquitted. In Thompson, the victim/witness was deaf and illiterate, but able to read lips. He did not *248 know sign language and communicated by making verbal sounds which could be understood only by those with special training. The court allowed a speech therapist to interpret. Whether the court had the authority to allow such testimony was not addressed in the decision.