OPINION OF THE COURT
Eugene L. Nicandri, J.
The first branch of defendant’s motion, to compel an answer to the demand to produce, is moot in view of the fact that the People have already tendered the requested item.
With respect to the request for an amplified bill of particulars, the request is denied. The People have sufficiently identified the period of time in which the charges in the indictment are alleged to have taken place.
The defendant’s rights to a Sandoval hearing (People v Sandoval, 34 NY2d 371) are reserved to a pretrial hearing.
Defendant also asks the court to suppress his statement to police officers, claiming that it was involuntary by reason of promises made to the defendant and by reason of denial of his needed medication at the time when his statement was obtained. These allegations are sufficient to require a fact-finding hearing. The Clerk of the Court will schedule a suppression hearing.
The next branch of the motion requests inspection of the Grand Jury minutes and dismissal on several grounds. The court has reviewed the Grand Jury minutes in camera and does not require disclosure to counsel in order to resolve the issues presented at the present stage of proceedings. Following such review, the court finds the presentation sufficient, as is the charge on the law, for Grand Jury purposes. The motion to dismiss for insufficiency is therefore in all respects denied.
The defense likewise seeks dismissal of the indictment on the grounds that the Grand Jury proceeding was defective within the meaning of CPL 210.35 (5). The objections under this conceptual heading follow two different theories. First, objection was made to the use of "facilitated communication” involving the testimony of a child victim witness. The second objection is that the presence of the facilitator in the Grand *476 Jury proceedings is claimed to have violated the provisions of article 190 with respect to persons present during Grand Jury proceedings.
From the information presented to the Grand Jury, the victim witness, who suffers great difficulty in performing the motor acts of speech, responds to questions by touching the keys of a mechanical device. Each key, when pressed, causes a synthesized voice to produce the sound of a letter of the English alphabet. It would appear that the witness listens to the question (there is no indication that this witness is deaf) and then, with the physical reinforcement of a lifting pressure from the facilitator under the witness’ wrists, the witness presses keys which cause the machine to produce a tone. In effect, the witness spells out his answer to questions, letter by letter.*
From a due process standpoint, all parties are concerned that the answers of any witness indeed be his or her own answers, and that the witness understand the question sufficiently to be able to respond. It is, of course, important to ascertain that the answer of the witness is not guided, controlled, suggested, or changed by the facilitator. Apparently, the facilitator does not speak during the question and answer process between the questioner and the witness. Additionally, in this case, the facilitator was equipped with headphones through which "white noise” was produced, so as to make it difficult or impossible for the facilitator to hear the questions.
Another important due process consideration however is the importance of the court or, in the case of the Grand Jury, the prosecutor, taking sufficient steps to enable qualified witnesses to testify. While over a century ago it was the law that the deaf-mute or mute person was incompetent to testify, that belief is discredited and is no longer the law. Indeed, the court must appoint a qualified interpreter for one able to communicate through such services. In such a case, the focus is on whether the witness has "the requisite ability to observe, recall and narrate his observations” and whether the interpreter can give an accurate, complete rendering of the communication of the witness. (See, Fisch, New York Evidence § 261, at 162; Judiciary Law §§ 387, 390; People v Rodriguez, 145 Misc 2d 105 [Sup Ct, Queens County 1989].)
Where the credentials of the interpreter have not been *477 established sufficiently to guarantee a full and complete transmission of the statement of the witness, the indictment must be dismissed. (People v Rodriguez, supra.)
Generally a witness is presumed to be competent to testify, but evidence as to his mental condition may be admissible on the issue of credibility, or his capacity to perceive and recall events. (People v Knowell, 94 AD2d 255 [2d Dept 1983].)
Questions of credibility are of course to be resolved by the trier of fact or, in this case, the Grand Jury, and may not be determined on a motion to dismiss. (People v Batashure, 75 NY2d 306 [1990]; People v Alexanian, 89 AD2d 700 [3d Dept 1982].) At this stage, the test is whether the evidence before the Grand Jury, if unexplained and uncontradicted, would warrant conviction by a trial jury. (People v Dossinger, 106 AD2d 661 [2d Dept 1984]; CPL 70.10 [1]; 190.65 [1].)
In the Grand Jury context, it was entirely proper for the District Attorney to advise the grand jurors that the determination of credibility of the witness was a jury function. It was also proper for the District Attorney to determine in the first instance that the witness was competent to testify. (People v Groff, 71 NY2d 101 [1987]; People v DiFabio, 79 NY2d 836 [1992].)
No reported cases in New York State deal with the competence of testimony through facilitated communication in the Grand Jury context. Two cases, Department of Social Servs. v Mr. & Ms. S. (Fam Ct, Ulster County, Sept. 15, 1992, docket No. N-530-91P) and Matter of M.Z. (Fam Ct, Onondaga County, Sept. 16, 1992), refused to permit the use in Family Court Act article 10 proceedings of prior out-of-court statements obtained through the use of facilitated communication, on the ground the proponent failed to show that such testimony comported with the Frye v United States (293 F 1013 [DC Cir 1923]) and People v Hughes (59 NY2d 523 [1983]) standards.
Those cases are distinguishable chiefly because they did not involve the proposed live use of facilitated communication. Here the grand jurors actually saw the witness testify, saw the facilitator, saw the headphones, and saw and heard the machine produce sounds indicating responses to questions asked of the witness. This mechanism of communication is a relatively new one for transmission of the answer of a witness. However, it has not been shown thus far that this process involves any interpretation or substitution of testimony by or *478 from a third party. The witness under oath moved his hands and the machine which he touched produced sounds corresponding mechanically to the letter keys touched.
Since this process, as presently understood by the court, does not involve interpretation, the body of case law addressing interpretation of testimony by witnesses who are unable to speak is necessarily of limited value in determining the issues facing this court on motion. Nevertheless, the cases dealing with interpreters are helpful because they illustrate one area of the law in which the courts have most recently struggled with the need to permit properly rendered testimony on the one hand, even though in a new form, and to protect the due process rights of the accused, who is entitled to accurate transmission of a witness’ testimony and a meaningful opportunity for cross-examination.
In allowing a speech therapist to interpret for a witness suffering from a severe case of cerebral palsy, one court recently observed that, "£j]ust because a procedure is unusual does not mean that it should not take place in a courtroom. The courts today should make every effort to open their door to all who seek to come through them. We can no longer take the attitude that if it has not been done in the past, it should not be done in the future. The age-old stereotyping of people with physical or mental disabilities or a combination of both should be dispensed with as soon as possible. The courts have come out of the dark ages with respect to the treatment of the deaf and hearing impaired, and we should likewise do so with respect to other physical and mental disabilities (see generally, People v Guzman, 125 Misc 2d 457, where the court allowed a deaf petit juror to sit with the assistance of a sign language interpreter).” (People v Miller, 140 Misc 2d 247, 249 [Rochester City Ct 1988].)
If, contrary to the court’s impression from review of the Grand Jury minutes, this mode of communication does involve reliance upon scientific conclusion, then there may well be serious questions as to whether those procedures enjoy sufficient acceptance in the scientific community which uses them to justify their reception and use in evidence here. The defense is entitled to probe this question in great detail. In order to afford that opportunity, the court will convene a hearing in limine, well in advance of trial, to inquire into the technique and mode of communication known as "facilitated communication.” At this hearing, the People will carry the burden of going forward to show the nature of the communicative pro *479 cess and its claimed normality as a direct rendering of the words of the witness. The purpose of the hearing is not to inquire into the testimonial competence of the particular witness. That is a matter to be reserved until trial.
The court finds no error in the presence of the facilitator in the Grand Jury room during the testimony of the nonspeaking witness, under the circumstances presented here. The District Attorney carefully explained the procedure to the Grand Jury. The foreperson swore the facilitator both to “assist this witness to communicate his answers without adding to, subtracting from or changing in any way the testimony he is giving” and to keep secret and confidential all matters before the Grand Jury, within the facilitator’s knowledge.
While not directly authorized to be present under CPL 190.25 (3), under these circumstances, the limited presence of the facilitator was not error. The mere presence of an unauthorized person in the Grand Jury does not automatically require dismissal. There must be some showing that the presence of the unauthorized person created a possibility of prejudice and impaired the integrity of the proceeding. (People v Hyde, 85 AD2d 745 [2d Dept 1981].) Here the facilitator was present only during the testimony of the witness whose communication was facilitated, and not during any of the deliberations or vote of the Grand Jury. For this reason in particular, the case is distinguishable from Matter of Cooligan v Celli (112 AD2d 789 [4th Dept 1985]), which held Grand Jury proceedings defective and invalid where a signor for a deaf person was present during Grand Jury deliberations and voting, since the deaf person was a grand juror. Similarly distinguishable is People v Di Falco (44 NY2d 482). In Di Falco, an unauthorized Special Prosecutor was present during the presentment on charges not committed to his authority. He was not sworn to secrecy and this fact, coupled with the fact that he was not listed in CPL 190.25 as an authorized person, together led the court to invalidate the proceeding. This case too is factually distinguishable from the one before this court.
The court has considered each of the other arguments raised in the moving papers. All motions not herein granted are denied.
The Clerk of the Court will schedule a hearing in limine for inquiry into the process of "facilitated communication”.

 For a discussion of facilitated communication, see, Biklen, Communication Unbound: Autism and Praxis, 60 Harv Educ Rev 3 (Aug. 1990).