OPINION OF THE COURT
Larry M. Himelein, J.
Defendant has moved to suppress the statements he made to members of the Wyoming County Sheriff’s Department on January 28, 1993 and February 11, 1993 on the grounds that they were involuntary and inherently untrustworthy given defendant’s mental state. A hearing was held before me on September 21, 1994 and November 30, 1994. The following are the court’s findings of fact and conclusions of law.
FINDINGS OF FACT
Defendant had become a suspect in the investigation of the murder of Charles Wells and the homicide team had concluded that defendant should be interviewed. On January 28, 1993, Investigators Gary Eck and Dennis Spink drove to defendant’s home and asked if they could ask him some questions. Defendant agreed to accompany them to the Sheriff’s Department and rode unrestrained in the rear seat of their unmarked car. Once there, they were joined by Under-sheriff Ely and Officer Tarbell.
Ely introduced himself to the defendant, told defendant they were investigating the homicide of Charles Wells and told defendant his name had come up as a suspect. Eck then read defendant a card containing the Miranda warnings and asked *741 defendant if he understood them. Defendant nodded yes. Eck then asked defendant if he would speak to them without an attorney and defendant said, "yes”. The interview lasted between 3Vi and 3% hours with Ely doing most of the questioning. During this period, defendant frequently gave long rambling answers to the questions and occasionally simply stared without answering. When the interview ended, defendant was driven home by one of the officers.
On February 11, 1993, the officers reinterviewed defendant. Defendant again agreed to accompany Spink and Eck to the Sheriffs Department conference room where he was re-advised of his constitutional rights. Defendant agreed to speak with the officers and did so for an hour or two. He was again verbose and rambling in responding to some questions and unresponsive in responding to others. He was, however, somewhat more communicative on this occasion and made the following statements:
"q. Were you at the scene when Charlie was killed?
"a. Probably.
"q. Did you point a gun at Charlie Wells?
"a. Probably.
"q. Did you pull the trigger that killed Charlie?
"a. Probably.
"q. What do you think the result of this investigation will be?
"a. I’ll probably go to jail.”
Defendant again was returned home when the interview was over.
CONCLUSIONS OF LAW
Defendant concedes that both interviews were noncustodial (People v Yukl, 25 NY2d 585). Thus, the statements made by defendant were not made in the context of a custodial interrogation and Miranda warnings were not required (People v Stebbins, 152 AD2d 946; People v Flint, 151 AD2d 964; People v McNeely, 77 AD2d 205). Nonetheless, defendant was advised of his constitutional rights on both occasions.
Defendant’s claim, conceding the noncustodial nature of the interviews, is that his statements should be suppressed, rather than precluded pursuant to a motion in limine, because defendant’s mental illness/volitional incompetency renders the statements involuntary and/or untrustworthy. Defendant re *742 lies primarily on Blackburn v Alabama (361 US 199) and People v Adams (26 NY2d 129).
In Blackburn (supra), a young man who had been discharged from the armed services as permanently disabled by psychosis was charged with a robbery that had occurred during his unauthorized absence from a mental ward. Blackburn confessed shortly after his arrest and was incarcerated. He was soon noted to be of unsound mind and was committed to a mental hospital for four years before being deemed competent to stand trial. The confession was admitted against him and Blackburn was convicted. The Supreme Court considered the circumstances surrounding the confession — an eight-to nine-hour continual interrogation in a tiny room filled with police officers; the absence of friends, relatives or counsel; and the drafting of the confession by a police officer rather than the defendant — and concluded that the chances of the confession having been the product of a rational intellect and free will were remote. Thus, Blackburn had been deprived due process (see also, Townsend v Sain, 372 US 293 [police physician gave Townsend a drug with truth serum properties]).
However, in Colorado v Connelly (479 US 157), the Court held that, notwithstanding a person’s mental state, coercive police activity is a necessary predicate to a finding of involuntariness under the Due Process Clause. In Connelly, the defendant, in response to hearing voices from God, had approached a Denver police officer to tell him he wanted to confess to a murder. After the startled officer took him into custody, Connelly gave a complete confession and later took two officers to the scene of the crime. After being held overnight, defendant became disoriented and was hospitalized and found incompetent. After he became competent, the trial court suppressed his confession on the grounds that Connelly’s mental state destroyed his volition, compelled him to confess and vitiated his attempt to waive the right to counsel and privilege against self-incrimination. The Colorado Supreme Court affirmed.
In reviewing 50 years of cases since Brown v Mississippi (297 US 278) was decided, the Court found that those dealing with police overreaching had all involved a substantial element of coercive police conduct. Absent such conduct causally related to the confession, there is no basis for concluding that a State actor had deprived a defendant of due process (Colorado v Connelly, supra, 479 US, at 164). A defendant’s mental condition, alone and apart from its relation to official coercion, *743 does not dispose of the inquiry into constitutional voluntariness (supra). Whether the statement might be unreliable, depending on the mental state of the arrestee, is a matter to be governed by the evidentiary rules of the forum and not by the Due Process Clause (supra, at 167). The Court also noted that Blackburn (supra) had involved such official coercion and that coercion, rather than Blackburn’s mental state, was the reason his confession was suppressed.
Thus, whatever defendant Ayers’ mental state on January 28, 1993 and February 11, 1993, it is clear that admission of his statements does not run afoul of the Federal Constitution. Whether their admission into evidence would violate the State Constitution, State rules of evidence of other proscription must now be determined. However, how is this to be done —by motion to suppress or motion in limine? If the challenge is simply to the reliability of the statements, is that a suppression issue for the court first, with the jury also having an opportunity to rule as mandated by CPL 710.70, or simply an evidentiary issue that may be raised at trial? Regrettably, existing authority is not completely helpful.
In People v Adams (26 NY2d, supra, at 137), the Court of Appeals noted that the same criteria that apply to statements made by one who is intoxicated are applicable to admissions made by one who is mentally ill, citing Blackburn v Alabama (supra) and People v Howard (27 AD2d 796). Those criteria include whether the defendant’s will is overborne by interrogation (see, Townsend v Sain, 372 US 293, supra), whether the intoxication rises to the level of mania, or whether the statements are shown by reference to other evidence to be unreliable (see, People v Schompert, 19 NY2d 300; People v Adams, supra).
In Howard (supra), the Fourth Department, also citing Blackburn (supra), suppressed statements made by an insane and mentally defective defendant because the People had failed to prove the statements were the product of a rational and meaningful act of volition. The citation to Blackburn apparently indicates that the Fourth Department relied on the Blackburn decision as a matter of Federal constitutional law and decided the case on that basis. However, since the Federal Constitution now requires coercive police conduct before a statement can be suppressed (Colorado v Connelly, 479 US 157, supra), Howard probably can no longer be relied upon as a statement of Federal constitutional law.
*744 In Schompert (19 NY2d 300, supra), a highly intoxicated defendant and chronic alcoholic with a history of psychosis confessed to a burglary and larceny. The police in Schompert, as here, engaged in no coercive or unfair tactics. The issue was simply whether the confession of a highly intoxicated person was voluntary.
The Court, perhaps presaging the decision to come in Connelly (supra), noted the distinction between self-induced intoxication and intoxication caused by law enforcement officials. Intoxication caused by officials or taken advantage of unfairly will result in suppression whether the confession is truthful or not. However, a confession from an intoxicated person, absent official coercion, will not be suppressed unless the person is intoxicated to the point of mania or to the extent that he cannot understand the meaning of his statements (People v Schompert, supra, 19 NY2d, at 305). The focus on a confession resulting from self-induced intoxication is the confession’s trustworthiness and that may be tested by evidence of subsequent events which confirm the reliability of the confession (supra, at 307). This appears to indicate a nonconstitutional ground for suppression, which one would expect would be more in the nature of an evidentiary ruling although the Court did not address whether the issue was one best decided under CPL article 710 or the rules of evidence.
There is authority for the proposition that if a defendant does not have the capacity to comprehend Miranda warnings, it would necessarily follow that he lacks the capacity to understand the nature and consequences of his statements to the police (People v Turkenich, 137 AD2d 363, 369). However, defendant concedes that these interviews were noncustodial; the administration of Miranda warnings appears to have been made out of an "excess of caution” (People v Smith, 62 NY2d 306, 312, n 2; see also, People v Oates, 104 AD2d 907). Accordingly, any challenge, even if made, to defendant’s capacity to understand or waive his rights would be to no avail (see, People v Dorsey, 118 AD2d 653).
The People must, of course, prove beyond a reasonable doubt, that defendant’s statements were voluntary (People v Witherspoon, 66 NY2d 973; People v Anderson, 42 NY2d 35; People v Huntley, 15 NY2d 72; People v Reed, 103 AD2d 998). However, once the People have established the legality of the police conduct, a number of cases hold that the burden of persuasion becomes the defendant’s (see, People v Dougan, 116 AD2d 929 [defendant alleged combination of drugs and alcohol *745 rendered him incapable of waiving his rights]; People v Love, 57 NY2d 998 [fact that defendant was a mental patient insufficient to meet defendant’s burden of persuasion]; People v Shields, 125 AD2d 863 [defendant claimed Miranda waiver impossible because of emotional instability and intoxication]). It is somewhat difficult to reconcile these two groups of cases.
I find that the People have proven the voluntariness of defendant’s statements beyond a reasonable doubt. Defendant agrees that both interviews were noncustodial; nonetheless defendant was advised of his Miranda rights. There were no coercive tactics brought to bear against defendant and he answered questions he chose to answer and did not respond to others. The absence of coercive police tactics removes this case from any Federal constitutional issue and I find no authority interpreting our State Constitution differently.
With respect to the reliability of these statements, Dr. Kolpillai, testifying on defendant’s behalf, could only opine that defendant was "likely” to have had some symptoms of schizophrenia that "could” have affected his will, defendant’s capacity to communicate "might” have been compromised, and the doctor had "some doubt” about defendant’s capacity at the time. He could not say with a reasonable degree of medical certainty that defendant did or did not understand his rights or the questions (see, People v Dougan, 116 AD2d 929, 930, supra [physician testified that combination of drugs and alcohol " 'could’ ” have affected defendant’s ability to understand his rights; statements found voluntary]).
Thus, even were I to view Dr. Kolpillai’s testimony in the light most favorable to defendant and completely disregard that of Dr. Barton (which is not the case), I could not and do not find the statements to be so inherently unreliable or untrustworthy as to bar their receipt in evidence. The uncontroverted testimony of the officers concerning the two interviews and defendant’s ability to understand the questions and answers are far more persuasive than the opinion that defendant’s mental condition "might” have affected his capacity.
However, nothing in this decision shall prevent defendant from arguing to the jury that the statements are not reliable. In this vein, I note that defendant is entitled to a charge that before the jury may consider the statements, they must find them both voluntary and truthful (1 CJI[NY] 11.01).
For all of these reasons, the motion to suppress is denied.