THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
VINCENT BANVILLE, JR., Appellant.

Second Department, January 11, 1988

## APPEARANCES OF COUNSEL

*Schoer & Sileo (Gary Schoer* of counsel), for appellant.

*Patrick Henry, District Attorney (Emily A. Constant* of counsel), for respondent.

## OPINION OF THE COURT

EIBER, J.

■ At issue is the propriety of a procedure, commonly employed by prosecutors of the various counties within this Department, whereby a superior court information is utilized to prosecute a defendant, notwithstanding the fact that the Grand Jury had returned an indictment prior to the submission of the information. For the reasons which follow, we conclude that the foregoing procedure is statutorily impermissible and that the judgment of conviction must, therefore, be reversed.

### I

By Suffolk County indictment No. 1010/82, the defendant, Vincent Banville, Jr., was charged with the crime of burglary in the second degree, a class C violent felony offense. Thereafter, on November 30, 1983, the defendant appeared in the Suffolk County Court, with counsel, and consented to waive the indictment and proceed by way of a superior court information. The defendant thereupon signed a standard waiver of indictment form, as did the defense counsel and the prosecutor. The court subsequently approved the waiver after it verified, on the record, that the defendant fully understood the significance of having executed the waiver of indictment form. The prosecutor then submitted to the court superior court information No. W-2849-83, which charged the defen-

dant with burglary in the third degree, a class D felony offense.[1]

The defendant offered to plead guilty to attempted burglary in the third degree, a class E felony offense, in full satisfaction of the superior court information. The court proceeded to advise the defendant of the rights he would be waiving by pleading guilty. The defendant was additionally informed, as part of the plea allocution, that the court ultimately intended to sentence him to an indeterminate term of 1½ to 3 years' imprisonment. In turn, the defendant acknowledged that he was voluntarily waiving the constitutional rights incident to a trial, that he was cognizant of the ramifications of his guilty plea, that his plea was not the product of force, threat, pressure or persuasion and that he had discussed the facts and circumstances, including potential defenses, with his attorney. A full colloquy between the court and the defendant, as to the factual elements of the burglary, ensued. Specifically, the defendant admitted that on April 22, 1982, he had unlawfully entered the home of a friend through a window and that he had intended to remove property from the premises, to wit, $15 in United States currency. On the strength of this factual account, and satisfied that the defendant had voluntarily and intelligently relinquished his constitutional rights, the County Court formally accepted his plea of guilty to the crime of attempted burglary in the third degree. Prior to fixing the date for sentencing, the County Court Judge expressly inquired as to the status of the indictment which had originally charged the defendant with the commission of a criminal act in connection with the April 22, 1982, incident. To this, the prosecutor responded: "[a]t the time of sentencing * * * we'll move to dismiss that matter".

On January 17, 1984, the defendant was adjudicated a second felony offender and was thereafter sentenced, pursuant to the terms of the plea agreement, to an indeterminate term of 1½ to 3 years' imprisonment. Following the imposition of sentence, the County Court, upon the People's motion, dismissed indictment No. 1010/82.

---

1. The prosecutor, in response to a direct inquiry by the County Court Judge, indicated that he sought to prosecute the defendant in this manner because the defendant had been acquainted with the family whose home he had burglarized. Evidently, the prosecutor was of the view that defendant's "prior involvement" with this family warranted more lenient treatment than that statutorily permissible under the pending indictment which had charged him with a class C violent felony offense.

## II

As a preliminary matter, we must address the People's threshold contention that the defendant, by his guilty plea, has forfeited his right to appellate review of his challenge to the validity of the accusatory instrument under which he was charged and convicted.

While there can be no doubt that a guilty plea represents an effective judicial admission by a defendant that he committed the acts charged in the accusatory instrument *(see, People v Lee,* 58 NY2d 491, 493-494), and although a defendant, in consideration for the bargain, waives certain rights attendant to trial *(see, People v Prescott,* 66 NY2d 216, 219-220), the doctrine of forfeiture of appellate review as a consequence of a guilty plea does not extend to defects or improprieties of a jurisdictional nature *(see, People v Motley,* 69 NY2d 870; *People v Fernandez,* 67 NY2d 686; *People v Taylor,* 65 NY2d 1).

We are called upon, in the context of this appeal, to address an issue which is wholly unrelated to the question of the defendant's factual guilt. Rather, the error cited in the present case is of a jurisdictional dimension since it concerns "the essential validity of the proceedings conducted below" *(see, People v Patterson,* 39 NY2d 288, 296, *affd* 432 US 197). It has long been the law of this State that a valid and sufficient accusatory instrument is a nonwaivable jurisdictional prerequisite to a criminal prosecution *(see, People v Case,* 42 NY2d 98; *People v Harper,* 37 NY2d 96; *People v McGuire,* 5 NY2d 523). The reference in this statement of law to the "validity" of the instrument under which charges are laid, pertains not only to substantive or facial sufficiency, but also embraces the concept that certain defects of a procedural character may not be waived, disregarded or forfeited as a result of a guilty plea. Thus, in *People ex rel. Battista v Christian* (249 NY 314) and later, in *People v Scott* (3 NY2d 148), the right to be prosecuted by an *appropriate* accusatory instrument was recognized to be a nonwaivable fundamental right. Concomitantly, in *People v Weinberg* (34 NY2d 429), the Court of Appeals recognized that an *unsatisfactory waiver* of the right to be prosecuted by indictment requires reversal of the conviction. Moreover, in its quest to ensure that criminal prosecutions formally comply with the mode of procedure mandated by the Constitution and statute, the Court of Appeals, in *People v Patterson (supra),* declared unequivocally that a defendant in a

criminal case cannot waive or even consent to error that would affect the organization of the court or the mode of proceedings proscribed by law. Stating this rule with greater force, the court elaborated: "where there [is] a fundamental, nonwaivable defect in the mode of procedure, then an appellate court must reverse, even though the question was not formally raised below *(People v Bradner,* 107 NY 1, 4-5; see *People v Miles,* 289 NY 360, 363-364)" *(People v Patterson,* 39 NY2d 288, 295, *supra).*

The defendant is contesting the legal propriety of his waiver of indictment. The essential thrust of his complaint is that the "mode of procedure" followed at the County Court level circumvented the statutory requirements governing the waiver of indictment process *(see,* CPL 195.10). Therefore, in answer to the People's contention, since this State does treat waiver of indictment issues as jurisdictional[2] *(see, People v Lee,* 100 AD2d 357; *People v Sledge,* 90 AD2d 588; *People v Herne,* 110 Misc 2d 152), and since this defendant has raised an issue with distinct jurisdictional underpinnings, neither his guilty plea nor the fact that he purportedly consented to be prosecuted by superior court information operates to foreclose appellate review of the merits of his claim.

## III

We turn then to the primary issue raised on appeal: whether it was legally erroneous to prosecute this defendant by means of a superior court information once the Grand Jury had returned an indictment.

Prior to 1974, the Constitution of this State provided, insofar as relevant here, that "[n]o person shall be held to answer for a capital or otherwise infamous crime * * * unless on indictment of a grand jury" (NY Const, art I, § 6). This provision was described in *Matter of Simonson v Cahn* (27 NY2d 1, 3-4), as a public fundamental right and not merely a personal privilege of a defendant which is subject to his waiver. The court in *Simonson* thereby reaffirmed its previous holding in *People ex rel. Battista v Christian* (249 NY 314, 318, *supra)* that, with respect to felony offenses, indictment by a Grand Jury was "requisite to jurisdiction to try, condemn and punish, is binding upon the individual and cannot be disre-

---

2. This court is cognizant of the contrary result reached by the Supreme Court, Kings County, in *People v Johnson* (135 Misc 2d 893), but does not find the reasoning of that case to be persuasive.

garded by him". Judge Jasen, the author of the dissenting opinion in *Simonson,* however, expressed the view that it was "totally unreasonable to hold that an accused may not knowingly and intelligently waive a rule which was made for his own protection" *(Matter of Simonson v Cahn, supra,* at 7).

The electorate, in an apparent response to the cogent criticism levied by the dissenters in *Simonson (supra),* thereafter approved a constitutional amendment permitting a waiver of indictment in certain cases *(see,* Bellacosa, Practice Commentary, McKinney's Cons Laws of NY, Book 11A, CPL 195.10, at 380). This amendment, which became effective on January 1, 1974, provides that "[n]o person shall be held to answer for a capital or otherwise infamous crime * * * unless on indictment of a grand jury, except that a person held for the action of a grand jury * * * for such an offense, other than one punishable by death or life imprisonment, with the consent of the district attorney, *may* waive indictment by a grand jury and consent to be prosecuted on an information filed by the district attorney" (NY Const, art I, § 6 [emphasis added]).

As a necessary incident of the constitutional amendment, the Legislature, in 1974, enacted enabling legislation in the form of CPL article 195. The limitations expressed in the constitutional amendment as well as the implementing statutes necessarily restrain utilization of the waiver of indictment process *(see, People v Smith,* 86 Misc 2d 1032, 1034). The most significant restrictions, for purpose of this appeal, are contained in CPL 195.10, which provides:

"§ 195.10 Waiver of indictment; in general

"1. A defendant may waive indictment and consent to be prosecuted by superior court information when:

"(a) a local criminal court has held the defendant for the action of a grand jury; and

"(b) the defendant is not charged with a class A felony; and

"(c) the district attorney consents to the waiver.

"2. A defendant may waive indictment pursuant to subdivision one in either:

"(a) The local criminal court in which the order was issued holding the defendant for action of a grand jury, at the time such order is issued; or

"(b) *the appropriate superior court, at any time prior to the filing of an indictment by the grand jury"* (emphasis added).

Thus, the Legislature has made it abundantly clear that

recourse to the waiver of indictment process and the substitution of a superior court information as the operative accusatory instrument is subject to precise time requirements. According to the plain wording of the statute, a waiver may be effected in the local criminal court at the time the order is made to hold the defendant for the action of the Grand Jury. However, thereafter "and at any time *up to the filing of an indictment by the grand jury*" (emphasis added), the waiver must be effected in a superior court *(see,* Bellacosa, Practice Commentary, McKinney's Cons Laws of NY, Book 11A, CPL 195.10, at 381). Along the same vein, one commentator has written: "A defendant may waive indictment in the local criminal court which issues the order holding him or her for action by the grand jury provided that the waiver is executed when the holding order is issued. Indictment may also be waived by a defendant in the 'appropriate superior court' *at any time prior to the return of an indictment by the grand jury \* \* \* It seems clear that if an indictment is returned for a crime arising out of the transaction for which defendant has been held for grand jury action, a subsequent waiver would be untimely"* (emphasis added) *(see,* Pitler, NY Crim Prac § 6.29B, 1979 Cum Supp, at 147).

The Legislature's inclusion in CPL 195.10 of strict time limitations within which an indictment may be waived is reflective of the goals the statute was intended to accomplish. As noted in *People v Herne* (110 Misc 2d 152, 155-156, *supra):* "The overriding purpose of the Legislature in enacting CPL article 195 is clear enough: 'The basic purpose of this bill, and the constitutional amendment it implements, is to allow a defendant who wishes to go directly to trial without waiting for a grand jury to hand up an indictment to do so. The waiver of indictment procedure will permit such a defendant to obtain a speedier trial and will save time and expense expended in unnecessary grand jury proceedings. The waiver of indictment should also reduce the backlog of cases presently awaiting grand jury action and reduce the time that defendants who want their cases presented to a grand jury must wait before an indictment is handed down. With fewer matters, grand juries should also be able to give more careful consideration to those cases which require their attention' (NY Legis Ann, 1980, p 10; see, also, NY Legis Ann, 1980, p 388.)"

■ It is manifest that the aforecited goals are not furthered where, as here, the waiver occurs subsequent to the return of

the indictment. Accordingly, in light of the fact that the Legislature has spoken unequivocally that a waiver may be effected "at any time *prior* to the filing of an indictment by the grand jury" and, mindful of the policy objectives which are served by this time limitation, we are impelled to conclude that once an indictment has been returned by the Grand Jury, any subsequent waiver is indeed untimely and hence, wholly ineffective. Concomitantly, a plea of guilty to any other accusatory instrument encompassing crimes arising out of the transaction for which the defendant was originally indicted must also be deemed a nullity.

Support for this conclusion may be found in the decision of the Appellate Division, Third Department, in *People v Cook* (93 AD2d 942). Accused of having stolen the sum of $250 from his mother, the defendant in *Cook* was indicted for the crime of grand larceny in the third degree, a class E felony offense. However, in consideration of the unique factual circumstances which gave rise to the indictment, the prosecutor believed it appropriate to afford the defendant an opportunity to plead to a misdemeanor offense. Therefore, subsequent to the filing of the indictment, the defendant, with the approval and endorsement of the prosecutor, waived his right to proceed by the indictment and consented to be prosecuted by a superior court information. An information was thereupon submitted to the court, charging the defendant with the crime of petit larceny, a class A misdemeanor, based upon the same facts and circumstances underlying the original indictment. The defendant ultimately pleaded guilty to this misdemeanor charge and, contemporaneously therewith, the indictment pending against him was dismissed in the interest of justice.

Though the Third Department premised its decision to reverse on the ground that the plea entered into by the defendant was statutorily prohibited,[3] the court, additionally, found it necessary to comment upon the propriety of the procedure utilized by the District Attorney's office. Significantly, the court noted: "Clearly, the adoption and use of this unusual procedure cannot be permitted to stand. Not only is it *contrary to the statutorily established procedural framework which permits a defendant to waive indictment before, but not, as happened here, after an indictment has been handed down*

---

**3.** The court concluded that the defendant's guilty plea circumvented the requirements of CPL 220.30 (3) (b) (ii) which prohibits a prior felony offender from pleading to less than a felony in satisfaction of an indictment charging him with the commission of a felony offense.

(CPL 195.10 subd 1), but also, most significantly, approval of the procedure in question would allow the People to evade and subvert the mandatory sentencing provisions established by the Legislature by the improper use of a superior court information * * * Accordingly, both the filing of the information and the acceptance of the guilty plea were fatally defective" *(People v Cook, supra,* at 942-943 [emphasis added]).

The similarities between the present case and *People v Cook* (93 AD2d 942, *supra)* are striking. The waiver process utilized in each case was fundamentally flawed in two respects. Firstly, the purported waivers were tendered beyond the time limitations specified in CPL 195.10. Secondly, the superior court informations filed at the behest of the prosecution had the effect of authorizing a lesser plea than would have been statutorily permissible under the indictments originally returned by the Grand Jury.[4] It has been noted, however, that the Legislature, in enacting CPL article 195 did not intend to "make such substantive changes in the criminal law as: providing a means by which the plea bargaining restrictions of CPL 220.10 might be avoided" *(see, People v Herne,* 110 Misc 2d 152, 156, *supra,* citing Bellacosa, Practice Commentary, McKinney's Cons Laws of NY, Book 11A, 1980-1981 Pocket Part, CPL art 195, at 133). Thus, while it is evident that the District Attorneys in both *Cook* and the present case employed the waiver procedure to avoid a harsh result, the fact remains that the statutory requirements of CPL 195.10 were circumvented and the plea bargaining limitations delineated in CPL 220.10 were undermined. Such departures from the mandate of our Legislature cannot be countenanced.

Finally, comment is in order regarding the People's assertion that the mode of procedure adopted at bar may be sustained on the basis of the discretionary powers vested in the office of the District Attorney. Although it appears that a prosecutor, in representing the State, is vested with broad discretion "to approve or withhold approval of [the right] to waive indictment" *(see,* Bellacosa, Practice Commentary, McKinney's Cons Laws of NY, Book 11A, CPL 195.30, at 385), it

---

4. The defendant, in the instant case, had been indicted by the Grand Jury for the crime of burglary in the second degree, a class C violent felony offense. Pursuant to CPL 220.10 (5) (d) (ii), a defendant who is indicted for a class C violent felony and wishes to enter a guilty plea, must plead to at least a class D violent felony. Therefore, as the People concede, had the instant plea to a class E felony been interposed under the indictment, it would have violated the plea bargaining restrictions of CPL 220.10.

must be emphasized that this discretion may not be exercised in contravention of the controlling statutes. Moreover, in view of the fact that these statutes implement a constitutional amendment, they should be construed "in such a way as to make them specific and limiting, *and not merely guidelines for the exercise of nonjudicial discretion" (People v Herne, supra,* at 157). Cases such as *People v Cook (supra), People v Sledge* (90 AD2d 588, *supra),* and *People v Alfano* (75 AD2d 584), upon which the defendant relies, effectively dispel the notion that the waiver of indictment process may be invoked at the prosecutor's whim. In each of those cases, utilization of the waiver process in violation of the requirements of CPL 195.10 resulted in a reversal of the conviction and dismissal of the accusatory instrument.[5]

In light of our determination that the purported waiver of indictment and prosecution by superior court information were fatally defective, we turn now to the issue of the appropriate corrective action to be taken. Although several courts, when confronted with an issue similar to that raised herein, believed that the appropriate remedy, following dismissal of the defective accusatory instrument, was to grant the People leave to represent the charges to another Grand Jury *(see, People v Lee,* 100 AD2d 357, *supra; People v Sledge, supra; People v Herne, supra),* it is the view of this court that this remedy would be inappropriate here, in that it would effectively recommit the matter to the discretion of the District Attorney. The essence of our holding, however, is that following the return of the original indictment, the District Attorney no longer possessed discretion to, in any way, alter the decision of the Grand Jury to indict the defendant for the crime of burglary in the second degree or to circumvent the plea bargaining limitations attendant to that charge. Since the prosecutor in this case did thwart the will of the Grand Jury by utilization of an invalid procedure, the defendant's plea, which was entered pursuant to that improper procedure, must be vacated, indictment No. 1010/82 must be reinstated, and the parties restored to the status quo ante.[6]

5. The defendants in both *People v Sledge* (90 AD2d 588) and *People v Alfano* (75 AD2d 584), were prohibited by the Constitution and statute from waiving indictment since they had been accused of having committed a class A felony offense.

6. Although we acknowledge that our disposition herein might be considered a "Pyrrhic victory" for the defendant since he is now subject to the charge contained in the original indictment, the defense counsel has advised

MANGANO, J. P., LAWRENCE and WEINSTEIN, JJ., concur.

Ordered that the judgment is reversed, on the law, the defendant's guilty plea is vacated, superior court information No. W-2849-83, is dismissed, indictment No. 1010/82 is reinstated, and the matter is remitted to the County Court, Suffolk County, for further proceedings on the indictment.

this court in his appellate brief that the defendant understood, "as reflected in letters to assigned counsel" that he might be exposed to "increased punishment" in the event of a successful appeal and that he, nevertheless, wished to proceed with the appeal.