■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MAURICE MCINTYRE, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Queens County (Lakritz, J.), rendered June 19, 1985, convicting him of murder in the second degree (two counts) and attempted robbery in the first degree (three counts), upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress his statements to law enforcement authorities.

Ordered that the judgment is affirmed.

At approximately 1:00 A.M. on September 30, 1984, three men attempted to rob a young man and woman who were seated in a parked car in Brookville Park in Rosedale, Queens. During the course of the attempted robbery, one of the assailants shot and killed the woman. As a result of an investigation of the circumstances surrounding the shooting, Detective Stanley Ferber of the 105th Precinct obtained information to the effect that the defendant and his codefendant Henry Smith, with whom he was jointly tried, were involved in the robbery and shooting. Subsequently, on October 11, 1984, the male victim identified both the defendant and Smith as two of the perpetrators from photographic arrays examined at the 105th Precinct. With that information, Detective Ferber and two other detectives proceeded to Smith's home and parked their car outside. Sometime between 10:00 P.M. and 11:00 P.M. that evening, the defendant was spotted approaching the Smith household. Detective Ferber stopped the defendant and asked his name. After the defendant identified himself, Ferber asked him to enter the police car to talk about the Brookville

Park shooting. Ferber testified that the defendant voluntarily agreed to enter the police car; the defendant said that he was ordered to get into the car.

At approximately 12:00 A.M., the officers transported the defendant to the 105th Precinct. While in the car, the defendant allegedly told the officers that someone named Eric Pasmour had told him that Smith and two others had committed the crime. Moreover, the defendant said that he had been told that Smith had pulled the trigger. According to Ferber, the defendant was not in handcuffs and was free to leave at any time.

The defendant was questioned in the police station throughout the night. He continuously maintained that Smith and two others had been involved in the crime. The defendant spoke to his mother on the telephone at about 1:30 A.M. Detective Ferber said that he told Mrs. McIntyre that her son was being questioned about the Brookville Park shooting but that he was. not under arrest. Mrs. McIntyre testified that Ferber also told her that her son would be home within two hours. There is no indication that either the defendant or his mother requested that he be permitted to leave. Detective Ferber, however, conceded that the defendant was not told that he could go home.

At approximately 8:00 A.M., Detective Ferber arrested Smith. At this point, Detective Ferber confronted the defendant and told him that Smith had been arrested and that he had spoken to Eric Pasmour. Ferber then told the defendant that "now is the time to tell the real story". Thereafter, the defendant relented, and for the first time, acknowledged that he, Smith and a third person had attempted to rob the couple in the car, but he still maintained that it was Smith who had actually shot the woman.

Immediately following the oral statement, Detective Ferber for the first time advised the defendant as to the four preinterrogation *Miranda* warnings. After acknowledging his understanding of those rights, the defendant, according to Ferber's testimony, repeated the story and Ferber reduced it to writing. The defendant read the statement and signed it at approximately 12:00 P.M. Assistant District Attorney Locketti arrived at the precinct sometime around 3:20 P.M., and, after again advising the defendant of his *Miranda* rights, took a videotaped statement from him. The videotaped statement was substantially similar to the two earlier statements.

The defendant moved to suppress all three statements.

Primarily, he argued that the initial oral statement was the product of a custodial interrogation and that the failure to advise him of his *Miranda* rights prior thereto rendered the statement inadmissible. Moreover, he claimed that the subsequent statements were also inadmissible because there was not a pronounced break between them and the tainted one. Criminal Term, however, found that the defendant was not in custody at the time that he first spoke to the officers.

Determination of the issue as to whether a particular individual is in custody prior to receiving the preinterrogation warnings turns on "not what the [accused] thought, but rather what a reasonable [person], innocent of any crime, would have thought had he been in the [accused's] position" *(People v Yukl,* 25 NY2d 585, 589, *mot to amend remittitur denied* 26 NY2d 883, *cert denied* 400 US 851; *see, Matter of Kwok T.,* 43 NY2d 213, 220). The question of whether a particular interrogation is custodial is largely a question of fact and the hearing court's findings should not be disturbed unless they are against the weight of the evidence *(see, People v Oates,* 104 AD2d 907; *People v Lopez,* 95 AD2d 241).

We find that, contrary to the conclusion reached by Criminal Term, the defendant was in custody from the time that Detective Ferber asked that he accompany the police officers in the police car. The situation confronting the defendant was overwhelmingly dominated by the police *(see, People v Hall,* 125 AD2d 698; *People v Pabon,* 120 AD2d 685, *lv denied* 68 NY2d 1003; *People v Garcia,* 103 AD2d 753, *cert denied* 469 US 1075). Moreover, the officers did not merely suspect that the defendant was involved in the crime. Rather, they had sufficient information as a result of the photographic identifications to effect the defendant's arrest. Under the circumstances, we conclude that the entire confrontation was designed to deliberately subjugate the defendant to the authority of the police and to extract a confession without the benefit of the preinterrogation warnings *(see, Matter of Kwok T., supra,* at 218; *People v Rodney P.,* 21 NY2d 1, 5-6). Thus, the initial oral confession must be suppressed inasmuch as it was the product of a custodial interrogation in which the defendant was not apprised of his constitutional rights.

The next issue that we must address is whether the initial, unlawfully obtained confession necessarily tainted the two subsequent statements given after the proper administration of the *Miranda* rights. The Court of Appeals has held, as a matter of State constitutional law, that unless there is "a definite, pronounced break in the interrogation * * * the

defendant may [not] be said to have returned, in effect, to the status of one who is not under the influence of questioning" *(People v Chapple,* 38 NY2d 112, 115; *People v Bethea,* 67 NY2d 364). Immediately following the tainted oral statement, Detective Ferber took a written statement from the defendant. Clearly, this statement is inadmissible because of the absence of any break in the interrogation *(see, People v Bethea, supra; People v Chapple, supra; People v Pabon, supra).* However, thereafter, there was an approximately 3½-hour hiatus between the written statement and the videotaped confession which, under the circumstances of this case, we conclude, constituted such a definite, pronounced break sufficient to remove the taint of the initial confessions *(see, People v Steed,* 133 AD2d 433; *People v Mahoney,* 122 AD2d 815, *lv denied* 68 NY2d 1002; *cf., People v Robertson,* 133 AD2d 355). Moreover, there is no evidence in the record to support the defendant's contention that he felt so committed by his prior oral and written statements that he believed it futile to invoke his right to remain silent prior to the videotape statement, i.e., the "cat-out-of-the-bag" theory *(see, People v Tanner,* 30 NY2d 102, 105-106; *People v Marino,* 135 AD2d 573; *People v Pagan,* 130 AD2d 687, *lv denied* 70 NY2d 753). Thus, the hearing court correctly denied suppression of the videotape. Inasmuch as the videotape contained the same information as the two prior statements, we find that the admission of those statements was harmless error *(see, People v Crimmins,* 36 NY2d 230; *People v Pabon, supra).*

Finally, upon the exercise of our factual review power, we find that the verdict was not against the weight of the evidence (CPL 470.15 [5]), and we conclude that the sentence imposed was not excessive *(People v Suitte,* 90 AD2d 80). Brown, J. P., Rubin, Eiber and Sullivan, JJ., concur.