■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v Ross D'AMICO, Appellant.—Judgment, Supreme Court, New York County (Alice Daniel, J.), rendered May 31, 1984, convicting defendant, upon his plea of guilty, of manslaughter in the first degree and criminal use of a firearm in the first degree, and sentencing him to concurrent indeterminate terms of imprisonment of from 8⅓ years to 25 years and from 10 to 20 years, respectively, unanimously affirmed.

On April 14, 1983, at about 3:30 A.M., defendant shot and killed his friend Richard SanSouci, at 400 East 71st Street, the building where SanSouci worked as a doorman. As San-Souci lay mortally wounded inside the building's compactor room, defendant turned the gun on another friend, William Toth, the night porter. After firing two shots at Toth and missing, defendant then chased and caught Toth, put the gun to the side of his head, and pulled the trigger; fortunately the gun jammed. Defendant then hit Toth in the face and head with the butt of the gun. As a result, Toth suffered multiple lacerations and contusions.

Meanwhile, a tenant who had heard the shots called the police. When the police arrived, they apprehended defendant at the corner of York Avenue and 71st Street, where he still had in his possession the .38 calibre revolver, which contained five spent rounds and one live round. Defendant told the

arresting officer that he had shot and killed a doorman in the basement at 400 East 71st Street. Toth subsequently identified defendant as the man who had attacked him earlier that night.

Defendant was thereafter indicted for murder in the second degree, attempted murder in the second degree, assault in the second degree and criminal possession of a weapon in the second and third degrees. During the course of a hearing to suppress the gun, statement and out-of-court identification, defendant and the prosecutor, after extensive plea negotiations, reached an agreement, pursuant to which the prosecutor dismissed the fourth count of the indictment charging defendant with second degree weapons possession, and filed a superior court information charging defendant with criminal use of a firearm in the first degree. Defendant waived indictment on that charge and, in exchange for a promise of a sentence to concurrent terms of imprisonment, the greater of which would be a 10-to-20-year term for criminal use of a firearm, pleaded guilty to the information; at the same time, he pleaded guilty to manslaughter in the first degree in full satisfaction of the four counts remaining in the indictment. Defendant was eventually sentenced as promised.

On appeal, defendant claims, *inter alia,* that his waiver of indictment was illegal, and that his guilty plea to the charge in the superior court information must be vacated. The remedy defendant seeks for these violations is not vacatur of his plea, but a sentence reduction. It should be noted that in September 1984, some four months after his sentencing, defendant moved, *pro se,* to vacate his guilty plea pursuant to CPL 440.10, claiming that his waiver of indictment was jurisdictionally defective for the very reasons he now asserts on appeal. That motion was denied on the merits, based on existing law. Among the reasons cited for the denial was that defendant, in essence, had solicited and agreed to the waiver procedure adopted. Defendant never sought leave to appeal from the denial of his CPL 440.10 claim.

CPL 195.20 provides that the charges in a superior court information "may include any offense for which the defendant was held for action of a grand jury and any offense or offenses properly joinable therewith pursuant to sections 200.20 and 200.40." Here, of course, criminal use of a firearm was plainly a "joinable" offense to the charges for which defendant was "held for action of a grand jury" since it arose out of the same series of events underlying the murder count. *(See,* CPL 200.20.) Notably, as the trial court found, that charge was

supported by the evidence that had already been before the Grand Jury. Accordingly, it was proper under the plain language of the statute for the information to charge defendant with criminal use of a firearm.

Nor did defendant's pleading guilty to a crime under a superior court information when the indictment originally charged him with an "A" felony constitute a violation of his rights. Defendant completely ignores not only that that part of the indictment charging him with second degree murder remains intact, but that he actually pleaded guilty to that indictment, and did not "waive" indictment, when he admitted his guilt of manslaughter—a lesser charge of that "A" felony. The charge which was dismissed—criminal possession of a weapon in the second degree—is a "C" felony. As the statutory scheme in the Criminal Procedure Law makes plain, each count of the indictment should be considered separately and, indeed, is considered severable. (See, e.g., CPL 200.20, 200.50 [3]-[7]; 200.80.) Thus, the dismissal of a count charging less than an "A" felony, the filing of a superior court information to less than an "A" felony, and a defendant's waiver of indictment on that information does not give rise to any jurisdictional infirmity.

In a converse argument, defendant claims that his waiver is jurisdictionally defective because the superior court information charged a count higher than the one dismissed. There is, of course, no statutory impediment to such a procedure; the only requirement is that defendant be "held for action of a grand jury" for the crime charged. As the trial court found, the count to which defendant pleaded was fully supported by the evidence before the Grand Jury and, in fact, was inherently incorporated into the counts charged by the Grand Jury.

That the Grand Jury was not given an opportunity to vote on that particular charge is understandable, since the superior court information, as drafted, alleged that defendant, "in the course of the commission of the Class B violent felony offense of Manslaughter in the First Degree, possessed a deadly weapon." The Grand Jury had not specifically charged defendant with the commission of manslaughter; it had charged him with second degree murder. As charged by the Grand Jury, however, first degree manslaughter is a lesser included offense of murder. Thus, it is clear that defendant did not plead guilty to a higher charge than the evidence before the Grand Jury supported, and the waiver was valid.

Even if, however, CPL 195.10 is interpreted to require that

the information contain the precise charge contained in the indictment, and not a higher count, thereby rendering the information in this case defective, it was permissible for defendant to waive the defect, as well as the requirement that the waiver of indictment occur before the filing thereof (CPL 195.10 [2] [b]), precisely because he himself not only agreed to the procedure, but termed it "legally and factually appropriate".

The Court of Appeals addressed virtually this same issue in *People v Ford* (62 NY2d 275) in determining that a defendant could waive objection to a trial court's error in submitting to the jury a lesser crime arising out of the same criminal transaction as the crime for which the defendant had been indicted, even though the submitted crime was not, in fact, a lesser included offense. In *Ford* and its two companion cases, the court rejected the defendants' contentions that such an error constituted a nonwaivable jurisdictional defect and thereby violated their constitutional rights to indictment. In each case, the court relied upon the Grand Jury's return of a valid indictment "sufficient to require the defendant to proceed to trial with respect to an identified criminal transaction out of which his subsequent conviction arose." *(Supra,* at 282.) The court reasoned that the indictment conferred on the trial court jurisdiction over offenses of which the defendants were accused, and that the trial court also had statutory authority to submit lesser included offenses of the indicted crimes. Accordingly, any error by the trial court in submitting a lesser crime which arose out of the same transaction but which was not, in fact, a lesser included offense, did not affect the court's competence to entertain the action or to convict the defendants of the crime. The court held that such an error was waivable if timely objection were not made. In each of the cases before it, the court held that the defendant, by either acquiescing in or affirmatively requesting a lesser charge, had waived his right to complain of the trial court's error.

The alleged defect in the information in this case is of precisely the same type as that which was held waivable in *Ford*. Indeed, the crime to which defendant pleaded guilty here was a legitimate joinable offense of the crimes for which he was indicted. Thus, as in *Ford,* a valid accusatory instrument conferred jurisdiction over defendant, and any error in subsequently convicting him of an offense that arose out of the same transaction could be waived under circumstances in which, for his own benefit, he acquiesced.

Equitable considerations also mandate the conclusion that

defendant waived his current objection to the alleged defect. He voluntarily entered into an agreement which he now claims was invalid, and obviously did so to obtain the benefit of a plea bargain not available under the original indictment. He now seeks a further benefit by invalidating the agreement on public policy grounds and then avoiding the criminal liability he faced prior to the agreement by arguing that the People are barred from reinstating the indictment. Public policy and equity do not permit a defendant to be thus rewarded for willingly participating in an agreement he believes to be invalid, and then belatedly seeking to invalidate it to obtain further benefit.

Concededly, the very possibility of affording defendants the opportunity for more favorable pleas than would have been possible under indictments for certain charges has led some other departments to hold that a procedure somewhat similar to that employed here was improper. *(See, e.g., People v Banville,* 134 AD2d 116, 124 [2d Dept]; *People v Cook,* 93 AD2d 942 [3d Dept].)* To the extent that the holdings of these cases are in direct contravention to *People v Ford (supra),* they should not be followed. In any event, the case principally relied on by defendant, *Banville,* is plainly inapposite. There, the defendant, while the original indictment was still pending, waived indictment and pleaded guilty to an information. It was only when the defendant appeared for sentencing on his guilty plea to the information that the indictment was finally dismissed. Here, of course, defendant waived indictment on the count charging second degree weapons possession only after the original charge was dismissed. *(But see, People v Cook,* 93 AD2d, *supra,* at 943.)*

There are, however, significant policy distinctions which differentiate *Banville (supra)* and *Cook (supra)* from the case at bar. While the courts in those cases concluded that the waivers there were untimely, both courts held that the procedures were improper principally because they would permit the People to evade the statutory sentencing provisions established by the Legislature. *(See, People v Banville, supra,* at 124; *People v Cook, supra,* at 943.)* Certainly, no argument can be made that that legislative scheme would be frustrated by upholding the guilty plea here. In *Banville* and *Cook,* permitting the plea under the information would have allowed the defendant and the People to evade a legislative mandate of a more severe sentence; here, invalidating the plea and refusing to accept the waiver would have the opposite effect. The legislative intent underlying the right of a defendant to waive

indictment to obtain an expeditious and favorable disposition of his case would hardly be served if that defendant were allowed to manipulate the system so as to guarantee a favorable plea bargain, which he could later have undone to the prejudice of the People.

Finally, we find that defendant's negotiated sentence was fair and appropriate. Concur—Sullivan, J. P., Asch, Milonas, Kassal and Wallach, JJ.