■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v APOLONIO ABREU, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Kings County (Kramer, J.), rendered February 28, 1985, convicting him of manslaughter in the first degree and rape in the first degree, upon a jury verdict, and imposing sentence of consecutive indeterminate terms of 6⅔ to 20 years imprisonment, and 8⅓ to 25 years imprisonment, respectively. The appeal brings up for review the denial in part, after a hearing, of that branch of the defendant's omnibus motion which was to suppress his statements to law enforcement officials.

Ordered that the judgment is affirmed.

The defendant was convicted of manslaughter in the first degree and rape in the first degree in connection with the rape and strangulation of a 20-year-old woman. The defendant was arrested shortly after the discovery of the victim's body, and he subsequently gave three separate oral statements to the police, as well as a videotaped statement to an Assistant District Attorney. Although the defendant's first oral statement was exculpatory, he later claimed that he had engaged in consensual sexual intercourse with the victim on the night of her death. Moreover, while the defendant initially maintained that the victim had been alive when he left her, during his final statement to the police he admitted that he had grabbed the victim around the body, including the neck,

shoulders, and legs, in the act of lovemaking, and remarked that "it may have been an accident".

Following a hearing, the Supreme Court suppressed the defendant's first oral statement, concluding that it had been involuntarily made. On appeal, the defendant contends, *inter alia,* that the hearing court should have also suppressed his subsequent statements because they were tainted by his initial statement to the police. We disagree. The hearing record demonstrates that there was a definite and pronounced break in interrogation between the defendant's initial statement, which was made prior to the administration of *Miranda* warnings at approximately 2:00 P.M. on July 1, 1983, and his subsequent oral statements, which were made after he had been fully apprised of his constitutional rights at about 10:00 P.M. This eight-hour break was sufficient to remove any taint which may have arisen from his initial statement *(see, People v Velasquez,* 171 AD2d 825; *People v Perry,* 144 AD2d 706; *People v McIntyre,* 138 AD2d 634).* The defendant's videotaped statement, which was made at 2:00 A.M. the next morning, and which essentially repeated his second and third statements to police, was similarly free from taint and admissible *(see, People v Chapple,* 38 NY2d 112, 115; *People v McIntyre, supra).* Moreover, contrary to the defendant's contention, since his first statement was exculpatory, he would not have felt that he had "let the cat out of the bag", and was bound to provide a partially inculpatory version *(see, People v Tanner,* 30 NY2d 102, 105-106; *People v Gonzalez,* 179 AD2d 775; *People v McIntyre, supra,* at 637).

The People met their burden of establishing that the defendant's subsequent inculpatory statements were voluntary beyond a reasonable doubt *(see, People v Anderson,* 42 NY2d 35).* While the defendant was detained for a total of approximately 12 hours, the length of detention alone does not render statements inadmissible *(see, People v Tarsia,* 50 NY2d 1, 11).* The record at bar establishes that the defendant was questioned for a total of 1½ to 2 hours, and was not subjected to " 'the kind of persistent and overbearing interrogation which has been held to be objectionable' " *(People v Padilla,* 133 AD2d 353, 354, quoting from *People v Robinson,* 31 AD2d 724, 725).* Moreover, the interrogating detective's comments to the defendant were not coercive, and any deception which may have been employed was not "so fundamentally unfair as to deny [the defendant] due process" *(People v Tarsia,* 50 NY2d 1, 11, *supra).*

In addition, viewing the evidence adduced at the trial in the

light most favorable to the prosecution (see, People v Contes, 60 NY2d 620), we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt. Moreover, upon the exercise of our factual review power, we are satisfied that the verdict was not against the weight of the evidence (see, CPL 470.15 [5]).

Further, we reject the defendant's claim that the imposition of consecutive sentences in this case was improper. At the conclusion of the trial, the jury returned a verdict acquitting the defendant of intentional murder and felony murder, but convicting him of rape in the first degree and manslaughter in the first degree. Following the announcement of the verdict, the prosecutor requested that the jury be sent back for further deliberations, arguing that it was inconsistent to find the defendant guilty of rape but innocent of felony murder. The prosecutor urged the court to advise the jury that there was an "inherent contradiction" in their verdict, commenting that if the jury "found he [the defendant] caused her death and they found he raped her, that is what felony murder is all about, during the rape or in furtherance of the rape or in immediate flight therefrom". The defendant's attorney opposed the application, arguing that the jury had apparently found that "there was no connection between the rape and the murder in terms of the connection necessary for the rape as a predicate to the murder, that it wasn't in the course of or in furtherance of the rape", and remarking, "[n]ow, I think that is a possible verdict". The defense counsel further complained that resubmission of the case would be tantamount to forcing the jury to return a felony murder conviction. However, after the defendant expressly agreed to waive his right to challenge the verdict on the grounds of repugnancy, the Trial Judge accepted the verdict, commenting that he believed that "there is a pattern of fact where the rape came to an end and then the manslaughter began * * * after the initial act of rape ceased". The Trial Judge subsequently sentenced the defendant to consecutive terms of imprisonment of 6⅔ to 20 years and 8⅓ to 25 years, respectively for rape and manslaughter, stating that "[i]t is clear to me that there is a factual determination that this jury made * * * and that is that the two (2) acts [the defendant] was convicted of were separate".

Although the defendant implored the trial court to allow the verdict to stand because the jury could have concluded that he did not kill the victim in the course of or in furtherance of the rape, he takes a contrary position on appeal. The defendant now contends that the victim suffered serious physi-

cal injuries during the course of the rape which resulted in her death, and that, in consequence, his manslaughter and rape convictions arose from a single act. The defendant thus reasons that the imposition of consecutive sentences for these two offenses violated Penal Law § 70.25 (2), which requires concurrent sentences to be imposed upon an individual who has committed two or more offenses through a single act or omission.

We believe that the defendant, having induced the trial court to accept the jury verdict by essentially arguing that the rape and strangulation of the victim were separate acts, should not now be permitted to relitigate this issue on "a totally contradictory ground" *(People v Clark,* 178 AD2d 303, 305). Assuming, arguendo, that the verdict was factually inconsistent, as the prosecutor contended, the trial court had the option of resubmitting the matter to the jury to obtain a consistent verdict, "even if that may require changing an 'acquittal' on one or more counts to a conviction" *(People v Alfaro,* 66 NY2d 985, 987; *People v Robinson,* 45 NY2d 448; *People v Salemmo,* 38 NY2d 357; CPL 310.50 [2]). Indeed, while resubmission under such circumstances is not mandatory, the Court of Appeals recently noted, in *People v Loughlin* (76 NY2d 804, 806), that where a factually inconsistent verdict is returned, it may well be advisable for the trial court to direct the jury to deliberate further. In the instant case, however, the defendant convinced the trial court to accept an arguably repugnant verdict by contending that the rape and strangulation of the victim constituted separate acts, and by expressly waiving his right to challenge on appeal his conviction on repugnancy grounds. By so doing, the defendant avoided the substantial risk that the jury, reinstructed as to the elements of felony murder, would have returned a new verdict convicting him of that crime. Accordingly, the defendant waived his claim that the offenses of which he was convicted constituted a single act, barring the imposition of consecutive sentences *(cf., People v D'Amico,* 150 AD2d 276, *affd* 76 NY2d 877).

Analogously, in *People v Gupta* (86 AD2d 960), the Appellate Division, Fourth Department, precluded the defendant from raising a repugnancy claim. In *Gupta,* the jury returned a verdict convicting the defendant of criminal sale of a controlled substance in the second degree, but acquitting him of criminal possession of a controlled substance in the third degree. When the jury announced the verdicts convicting him of the sale count but acquitting him of possession with intent

to sell, the defendant objected to the court's proposal that it resubmit both counts to the jury with supplemental instructions. Instead, the defendant contended that the criminal sale count alone should be resubmitted, and that the verdict on the criminal possession count should be recorded as an acquittal pursuant to CPL 310.50 (2). Faced with the defendant's objection and the possibility of a claim of double jeopardy in the event of resubmission of the criminal possession count, the court, in part, acceded to the defendant's request, recorded the verdict on the possession count as an acquittal, and declined to resubmit the criminal sale count alone. In rejecting the defendant's subsequent argument that the verdict was repugnant, the Fourth Department observed that "[u]nder these circumstances, defendant may not now be heard to claim that the verdicts are fatally repugnant. At defendant's request, the court took the very course which made impossible the resubmission of the case and the correction by the jury of the claimed inconsistency in the two verdicts" *(People v Gupta, supra,* at 961). Similarly, since the defendant at bar prevailed upon the trial court to accept the verdict by maintaining that the jury could have properly found that the victim was not murdered in the course of the rape, we decline to entertain his contradictory claim that in fact the strangulation occurred in the course of the rape, and that the two offenses constituted a "single act" for sentencing purposes.

We have examined the defendant's remaining contentions, and find them to be without merit. Bracken, J. P., Balletta and Ritter, JJ., concur.

Eiber, J., concurs in the result, with the following memorandum: Even if the defendant had not waived his present claim, I would nonetheless find that consecutive sentences were properly imposed inasmuch as the trial court reasonably concluded that the defendant's acts of raping and strangling the victim constituted separate and distinct crimes. The testimony presented at the trial establishes that on the morning of July 1, 1983, an eyewitness was awakened by the sound of muffled voices coming from her backyard. Through the window of her bungalow, she observed the victim lying on the ground, while the defendant kneeled over her, holding her down. According to the eyewitness, the defendant, who had his "hand over her mouth, pressing very tightly against her mouth", then proceeded to fondle the victim's body and pull down his trousers. Still holding his hand against the victim's mouth, the defendant raped the young woman, who flailed her legs for several minutes in an effort to strike him before she

became still. Although the defendant attempted to hide the victim's body in a storage shed, he was unable to carry her because "she was a dead weight".

After the defendant fled the scene, the eyewitness dressed, went outside, and asked a neighbor to contact the police. Several minutes later, Officer Peter Colonna, responding to a radio call, discovered the victim's body lying in the yard behind the eyewitness's bungalow. Her dress was up above her waist, and her panties were torn and pulled down to her right knee. According to the People's expert pathologist, the cause of the victim's death was asphyxia by strangulation, and her injuries were consistent with the application of a fair amount of force or pressure in the neck area by a man of the defendant's size. The pathologist also noted that three bones in the victim's neck, in the area of the larynx, were fractured. Based on the pattern of external abrasions on the victim's body, the pathologist further determined that the victim had been strangled by a bare hand or arm, and not by some other object.

As my colleagues note, the issue of whether consecutive sentences were properly imposed in this case is governed by Penal Law § 70.25 (2). This statute mandates that a sentence imposed upon "a person for two or more offenses committed through a single act or omission, or through an act or omission which in itself constituted one of the offenses and also was a material element of the other * * * must run concurrently". As the Court of Appeals pointed out in *People v Day* (73 NY2d 208), Penal Law § 70.25 (2) thus requires a two-pronged inquiry, and the defendant must receive the benefit of concurrent sentences if either prong of the test is satisfied.

The first prong of the statute calls upon the court to determine whether the offenses of rape and manslaughter were committed through "a single act or omission". In *People ex rel. Maurer v Jackson* (2 NY2d 259), the Court of Appeals construed former Penal Law § 1938, the predecessor to Penal Law § 70.25, by observing that "if separate and distinct acts were committed, and they violated more than one section of the Penal Law, punishment for each of them would be proper although they arose out of a single transaction". Moreover, as the Court of Appeals more recently explained in *People v Day* (*supra*, at 212): " ' "The test is not whether the criminal intent is one and the same and inspiring the whole transaction, but whether separate acts have been committed with the requisite criminal intent" ' (*People v Baker*, 27 AD2d 269, 272, *affd* 19 NY2d 982, quoting *Morgan v Devine*, 237 US 632, 640).

Consecutive sentence is available 'if the Legislature has seen fit to provide that up to a particular point the acts of the defendant constitute one crime and that the acts of the defendant, committed thereafter, constitute a second crime and that each series of acts constitute a separate crime' *(People v Synder,* 241 NY 81, 83-84)".

While it has been observed that "[t]he test of what is the same 'act' made punishable in 'different' ways is not always clear" *(People v Di Lapo,* 14 NY2d 170, 175 [Bergan, J., dissenting]), a logical starting point for analysis is Penal Law § 15.00 (1), which defines the term "act" to be "a bodily movement". At bar, the defendant both raped the victim, and asphyxiated her by applying a substantial degree of pressure to her neck. Since the defendant's strangulation of the victim was not part of the act of rape, it seems clear that the "acts" committed by the defendant are separate and distinct under the basic statutory definition. Indeed, that the defendant at bar was acquitted of felony murder, but convicted of rape and manslaughter, indicates that the jury itself rejected the theory that the homicide was committed in the course of or in furtherance of the rape, and concluded that the crimes committed were separate acts. The Trial Judge also agreed that the jury could have reasonably found, based on the evidence presented, that the homicide was a separate act not committed in course of the rape. The Trial Judge's further conclusion that the strangulation occurred after the rape is supported by the eyewitness's testimony, which indicates that after the defendant penetrated the victim, she kicked her legs for several minutes in an attempt to fight him off. Since the crime of rape requires only penetration *(see,* Penal Law § 130.00 [1]; § 130.35 [1]; *People v Wheeler,* 109 AD2d 169, *affd* 67 NY2d 960), the record thus indicates that the rape was complete before the defendant killed the victim.

It is also significant that the defendant used more force than necessary to subdue the victim for the purpose of raping her. Analogously, in *People v McMillan* (61 AD2d 800), this court upheld the imposition of consecutive sentences for the rape in the first degree and burglary in the second degree of a 72-year-old woman. The testimony adduced at trial established the defendant knocked on the victim's door and, when she opened it, "plunged" into the room, grabbed her by the throat, and threw her to the floor. The defendant then banged the victim against the floor before raping her. Under these circumstances, this court concluded: "We hold that the Penal Law does not prevent the imposition of consecutive sentences

under the facts of this case. It is certainly not impossible to say that there were separate acts making out separate crimes (see *People v Di Lapo, supra; People v Baker,* 27 AD2d 269 [*, affd* 19 NY2d 982]). The physical injury necessary for burglary in the second degree was inflicted at the point when the defendant grabbed his victim by the throat, threw her to the floor and banged her against the floor. The rape occurred subsequent thereto and was a separate act. The mere fact that there was a continuous course of activity here is insufficient to require concurrent sentences (see *People ex rel. Tolbert v Murphy,* 25 Misc 2d 647, affd 14 AD2d 484). Considering the fact that the victim here was 72 years old, it is clear that the defendant utilized far more force than was necessary to subdue her and it cannot be said that the injury inflicted was incidental to the rape and not separate and apart from it" *(People v McMillan, supra,* at 800). Similarly, in the instant case, the six-foot-one-inch 200-pound defendant used far more force than necessary to subdue the five-foot-four-inch 105-pound victim. Moreover, after the defendant penetrated the victim, thus completing the act of rape, he continued to apply a substantial amount of pressure to her neck, fracturing three bones near her larynx and ultimately causing her to die of asphyxiation. The force necessary to restrain the victim in order to commit the rape was not the same force which caused her death *(cf., People v German,* 139 AD2d 529), and the defendant's continued use of force to restrain the victim after penetrating her demonstrated an intent to inflict serious injury separate and apart from the intent to commit rape. Accordingly, on this record, it is not impossible to say that there were separate acts making out separate crimes *(see, People v Di Lapo, supra; People v Baker, supra).*

The second prong of Penal Law § 70.25 (2) requires the court to determine whether either offense committed by the defendant was a material element of the other. Discussing this prong of the statute in *People v Day (supra,* at 211), the Court of Appeals explained that "the commission of one offense is a material element of a second for restrictive sentencing purposes if, by comparative examination, the statutory definition of the second crime provides that the first crime is also a necessary component in the legislative classification and definitional senses". Reference to the fact-specific circumstances of the case to determine whether an element of one offense is a material element of a second offense is not the test for consecutive sentencing purposes *(see, People v Day, supra).*

Pursuant to Penal Law § 130.35 (1), a male is guilty of rape

in the first degree when he engages in sexual intercourse with a female by means of forcible compulsion. The crime thus requires proof that the defendant engaged in sexual intercourse with the victim without her consent, through the use of either physical force or an express or implied threat which placed the victim in fear of immediate death or physical injury (Penal Law § 130.00 [8]). In contrast, manslaughter in the first degree requires proof that the defendant "[w]ith intent to cause serious physical injury to another person" causes "the death of such person" (Penal Law § 125.20 [2]). The statutory elements of rape are thus categorically discrete from the elements of manslaughter, and the absence of "legislatively declared interdependence" in the definitions of the two offenses establishes that consecutive sentences are not prohibited under the second prong of Penal Law § 70.25 (2) *(see, People v Day, supra)*.

Accordingly, I conclude that concurrent sentences are not statutorily compelled in this case.