■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LEON DUNCAN, Appellant. [744 NYS2d 444] —Appeal by the defendant from a judgment of the Supreme Court, Kings County (D'Emic, J.), rendered March 9, 2000, convicting him of manslaughter in the first degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress his statements to law enforcement officials.

Ordered that the judgment is affirmed.

The defendant was convicted of strangling his girlfriend on June 5, 1999. The victim's body was discovered by police and identified on the morning of June 11, 1999. Later that day, at approximately 6:30 P.M., the police went to the defendant's apartment and asked to speak to him about the missing persons report he had filed concerning the victim. After a few minutes the defendant was asked to accompany the officers to the precinct. The defendant agreed and then spent the next 10 hours at the station house.

The defendant, who was not handcuffed, was placed in an

interview room and was questioned by detectives about the missing persons report, the victim's alleged disappearance, and the last time he saw her. This off-and-on interview, including two trips back to the defendant's apartment to retrieve certain sales receipts, continued until approximately 2:00 A.M. The defendant then slept for a short while until about 2:45 A.M., when the interview process resumed. At about 4:30 A.M. the detectives told the defendant that it was "time to stop the bull junk," and alleged that they had a videotape of him dumping the victim's body in a lot. Approximately one half hour later, the detectives repeated that they had this videotape and the defendant stated, "she just kept f * * * ing with me." It was at this point that the defendant was first read his *Miranda* rights (*see Miranda v Arizona,* 384 US 436). The defendant then signed a *Miranda* card and waived his rights.

Thereafter, the defendant gave a written statement confessing to the killing, but stated that he had acted in self-defense. The statement was reviewed and signed by the defendant and dated June 12, 1999, at 5:50 A.M. The defendant was then placed under arrest. At approximately 9:45 A.M., the defendant gave a videotaped statement to the District Attorney's office after an Assistant District Attorney again read him his *Miranda* rights. The videotaped statement was substantially similar to the defendant's written statement.

The defendant moved to suppress all of his statements to the police. Primarily, he argued that any pre-*Miranda* statement was the product of a custodial interrogation and thus inadmissible. The defendant also claimed that his post-*Miranda* statements were inadmissible because there was no pronounced break between those and any statement he made before he was advised of his rights. The Supreme Court denied supression of all statements and held that the defendant was not in custody at the time that he first spoke to the police.

Contrary to the Supreme Court's conclusion, we find that under all the circumstances the defendant was in custody before he was first advised of his *Miranda* rights (*see People v McIntyre,* 138 AD2d 634). However, the record also reveals that the defendant did not make any inculpatory statement before that point in time. In particular, the statement which the defendant made just prior to being advised of his *Miranda* rights was essentially innocuous and did not constitute "smoking gun" evidence. Thus, the defendant was not entitled to suppression of this oral statement or the written statement he provided immediately after he was advised of his *Miranda* rights.

In any event, assuming that the oral and written statements were tainted, this did not render the subsequent videotaped confession inadmissible. The approximately four-hour hiatus between the written statement and the videotaped confession constituted a definite, pronounced break sufficient to remove the alleged taint of the initial confessions (*see People v Wright,* 217 AD2d 675; *People v Salami,* 197 AD2d 715; *People v Velasquez,* 171 AD2d 825). Furthermore, there is no evidence in the record to establish that the defendant felt so committed by his prior oral and written statements that he believed it futile to invoke his right to remain silent prior to the videotape statement (*see People v Tanner,* 30 NY2d 102, 105-106; *People v McIntyre, supra*).

Viewing the evidence in the light most favorable to the prosecution (*see People v Contes,* 60 NY2d 620), we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt. Moreover, upon the exercise of our factual review power, we are satisfied that the verdict of guilt was not against the weight of the evidence (*see* CPL 470.15 [5]).

The sentence imposed was not excessive (*see People v Suitte,* 90 AD2d 80).

The defendant's remaining contentions, including those raised in his supplemental pro se brief, are either unpreserved for appellate review or without merit. Santucci, J.P., Altman, Goldstein and Luciano, JJ., concur.