■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BOOKER BRIGGS, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Richmond County, rendered December 23, 1977, convicting him of murder in the second degree, upon a jury verdict, and imposing sentence. Judgment affirmed. Defendant stands convicted of the murder of a 73-year-old woman who was his neighbor. The deceased was found "sprawled on her bed" dead in her apartment at 780 Henderson Avenue on December 7, 1976 in the early afternoon. She was also the victim of a rape and her pocketbook was missing from the apartment. The door to the apartment was unlocked and there was no evidence of forcible entry. On the day of the crime, defendant told police that he had met the deceased in the hall that morning, and had helped her empty her garbage. The testimony of other witnesses established that defendant was in the building for most, if not all, of the morning. On December 23, 1976 one Delroy Tyndale was drinking beer in the Three-D Bar at 1076 Castleton Avenue, 100 feet from 780 Henderson Avenue, and noted defendant, whom he had "seen * * * before" around the neighborhood, also sitting at the bar. Tyndale overheard defendant's companion, an unidentified male, say, "You didn't have to kill that fucking lady" and defendant reply, "I didn't mean to kill her." Defendant added "I didn't know she was dead until the next day. I didn't even know someone was in the apartment". On December 26, 1976 Tyndale borrowed his father's car without his knowledge; his father reported it stolen, and Tyndale was arrested for unauthorized use of a vehicle. Tyndale told the District Attorney his story and was promised parole at arraignment. Later, his father withdrew the charges. On December 28, 1976, Tyndale told his story to Detective Anthony De Gise. At 8:40 A.M. on January 14, 1977, Detective De Gise placed defendant under arrest for the murder, as well as for five separate unrelated charges. Detective De Gise testified that he

knocked at the door to defendant's apartment, identified himself as Tony De Gise, but did not state the purpose of his visit. When defendant opened the door, De Gise informed him he was under arrest and advised him of his *Miranda* rights. Defendant said he was willing to answer questions without an attorney being present. Detective De Gise took defendant to the 122nd Precinct where he was readvised of his *Miranda* rights and of each of the charges against him. Defendant asked how he was identified in each of those cases and Di Gise told him. The defendant discussed his prior experiences in jail, and remarked that "jail doesn't do any good for you because you don't get rehabilitated." At around 1:00 P.M. defendant spoke to Mary Ann Touhy. Thereafter, defendant confessed to the murder and his confession was reduced to writing. In that confession, defendant described certain details of the crime scene, to wit, that he tied the victim's hands to the bedposts with string and "I don't remember what else", cleaned the knife with something which he put in the toilet bowl, and threw the knife in the sink. This was consistent with the facts that the victim's left hand was tied to the bedpost with what was described as "venetian blind cord", that a stocking was tied around her right hand, that a knife with blood on it was found in the kitchen sink, and that blood was found in the toilet bowl. The Grand Jury subsequently handed down a seven count indictment, charging defendant with murder in the second degree (two counts), rape in the first degree, sexual abuse in the first degree, burglary in the second degree (two counts) and criminal possession of a weapon in the third degree. Defendant challenges the admissibility of his confession alleging that the arrest was effected without probable cause, and that the confession was involuntary. In his written motion to suppress, defendant alleged that his Fourth Amendment rights had been violated because the arrest was effected without a warrant. The first time defendant mentioned the issue of probable cause was during the suppression hearing, after the People had rested. That challenge, improperly raised, was properly rejected by the trial court (see *People v Roberto H.,* 67 AD2d 549). Further, the fact that the arrest was effected in defendant's home without a warrant did not render the arrest illegal (see *People v Payton,* 45 NY2d 300). As for the alleged involuntariness of defendant's confession, we find no grounds to disturb the trial court's finding that the confession was voluntarily made and was admissible at the trial. Defendant also challenges the sufficiency of the evidence against him. The most compelling circumstance in his favor was the fact that defendant was blood type A, and secreted the A factor into his bodily fluids, while the A factor was not found in the victim's vaginal fluid, although spermatozoa and semen were present. Dr. Dominick Di Maio could not say, with medical certainty, whether defendant was the person who had had sexual intercourse with the deceased; he could only certify that he had not found the A factor in the vaginal fluid examined. After both sides rested, the court noted that the People offered no proof that defendant had committed the crimes of rape or sexual abuse and based upon that determination, dismissed felony murder, rape, sexual abuse and burglary charges against defendant. In that respect it should be noted that defendant never mentioned rape in any of his statements. However, the intentional murder count was submitted to the jury and defendant was found guilty of that charge. It cannot be said that the verdict was against the weight of the evidence. Defendant also objected to the charge with respect to motive. After instructing the jury that the People were not required to establish motive, the trial court noted that motive "may or * * * may not have a bearing on the facts" and, consequently, adequately instructed the jury on the subject (see *People v Sangam-*

*ino,* 258 NY 85, 88). Further, since defendant's guilt was primarily established by his confession, which was direct and not circumstantial evidence (see, e.g., II Wigmore, Evidence [3d ed], § 479), motive was not of primary importance. The principle urged by defendant, stated more directly, was that the jury should consider the evidence that defendant may not have committed rape on the question of whether defendant committed the murder. In that respect, the court's marshaling of the evidence erred in favor of defendant. The court instructed the jury that Dr. Di Maio testified that the defendant is a secreter with A-type blood, and that the sperm deposited in the victim's vaginal canal could not be his. However, the blood typing test could not be performed on the sperm, but only upon the fluid. Therefore, the trial court's instructions did not violate defendant's rights. We have considered the other points raised by defendant and find them to be without merit. Lazer, J. P., Margett, Martuscello and Mangano, JJ., concur.