■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DARRELL LAWRENCE, Appellant.—Judgment, Supreme Court, New York County (Irving Lang, J., at hearing, plea and sentence), rendered April 29, 1987, which convicted defendant, upon his plea of guilty, of attempted criminal possession of a weapon in the third degree, and sentenced him to a prison term of 2 to 4 years, reversed, on the law, the motion to suppress granted, and the indictment dismissed.

Defendant's conviction arises out of an incident which occurred on West 154th Street in Manhattan in the late afternoon of November 19, 1986. Police Officer Michael Cummings, the only person to testify at the suppression hearing, was on routine patrol in the neighborhood in plain clothes together

with two other police officers in an unmarked Chevrolet Impala. They received a radio call of "shots fired" on the fourth floor of 262 W. 154th Street. No description of the perpetrator was given nor did Cummings have any information as to the source of the information. 262 W. 154th Street is a five-story residential apartment building which Cummings described as a "narcotics prone building".

When the officers arrived at the location some two minutes after the call, Cummings arranged his police shield, which was worn on a neck chain, so that it hung outside of his clothing. As the car pulled up to the building, the officers noticed defendant standing alone on the stoop in front of the building. According to Cummings' testimony, he and the defendant made "eye contact" and defendant immediately turned and ran inside the building. Cummings and one of his partners jumped out of their car, and with their shields displayed and guns drawn, yelling "police, don't move", ran after the defendant. The defendant ran up the stairs, arriving at the fourth-floor landing before Cummings caught up with him. Cummings ordered, "Don't move, turn around, put your hands on the wall." Defendant complied. After assuring himself that his partner was "covering" him, Cummings holstered his gun and frisked the defendant. Feeling a hard object in defendant's left front jacket pocket, Cummings reached in and recovered a loaded pistol. Cummings did not ask defendant any questions before the frisk, nor did defendant say anything. Cummings smelled the gun to see if it had been recently fired, but it appeared that it had not. He investigated the fourth floor but found no spent shells on the floor, nor did he discover any other evidence of anyone being shot.

The officers arrested defendant and brought him to the 32nd Precinct. At the precinct, they read defendant his *Miranda* rights. Defendant waived his rights and in response to the officers' questions stated that he had bought the gun for $50.

After the combined *Wade/Huntley* hearing, the court credited Officer Cummings' testimony, and we find no reason to disturb that determination. The hearing court also found that there was no probable cause to arrest the defendant because the police had no idea whether a crime had been committed or whether the defendant was involved in the commission of a crime. Notwithstanding these findings, the court denied the suppression motion because it found that the police officers, in responding to an "inherently dangerous situation", acted reasonably, and that the "only prudent and appropriate thing for the officer to do at that time was to frisk defendant for a

weapon, nothing more, and determine if he was armed, at least for his own safety." The court also denied the motion to suppress the statements made at the precinct, finding that the appropriate warnings had been given.

We disagree with the ultimate conclusion of the hearing court and would grant the motion to suppress. The court's initial analysis was correct—that the police officers had no probable cause to arrest the defendant who was merely standing outside an apartment building in the late afternoon. Supplied only with an anonymous, unconfirmed report that shots had been fired inside the building in question, there was no reasonable basis for the police to believe that defendant was involved in the commission of a crime. Armed with this unconfirmed information, the police at most had a common-law right to inquire *(People v De Bour,* 40 NY2d 210). The citizen to whom the inquiry is directed, however, has a constitutional right not to respond and may walk, even run, away, and absent probable cause that the individual has committed a crime, a police officer may not pursue, search, or seize the individual. *(People v Howard,* 50 NY2d 583.)

Here, defendant's flight did not justify the pursuit by the police with guns drawn and the subsequent frisk. The mere circumstance of defendant's presence in front of a building about which there was an unconfirmed, anonymous report of "shots fired", and his running inside the building upon the arrival of the police, is just as susceptible of an innocent as of a culpable interpretation. It has now been established that without any additional indicia of defendant's criminal activity, flight alone does not justify pursuit. *(People v Torres,* 115 AD2d 93; *People v Martin,* 140 AD2d 632; *People v McFadden,* 136 AD2d 934.)* Furthermore, the circumstances of defendant's flight do not support the hearing court's conclusion that the police officers faced an "inherently dangerous situation" requiring them to frisk the defendant.

It is also significant that the radio run was an unconfirmed, anonymous tip. The police officers observed nothing to confirm the allegations of a crime, and there was no unique description of a perpetrator which defendant met. For this reason, too, the police lacked probable cause to believe that a crime had been committed or to link defendant with a crime. Furthermore, the almost contemporaneous radio run was a report of shots fired on the fourth floor of the building. Here defendant was standing outside the building. The amorphous description of defendant's "eye contact" and his subsequent flight into the building did not supply any confirmatory infor-

mation to give the police reasonable suspicion that defendant had committed a crime. Accordingly, the police pursuit of the defendant and the stop and frisk were unsupportable, and the gun must be suppressed.

The issue of the suppression of defendant's statement at the precinct was not thoroughly addressed at the hearing since the hearing court focused on the *Mapp* issue. When the court found the search and seizure proper and that the *Miranda* warnings had been properly given, it denied the motion to suppress the statement, without extensive comment.

Since we find that the search and seizure was improper, the statement made one-half hour later, after the arrest, must be suppressed as fruits of the illegal search. *(See, e.g., Wong Sun v United States,* 371 US 471.) The giving of *Miranda* warnings cannot attenuate the taint of the unlawful arrest.

Accordingly, the suppression motion should be granted in its entirety and the indictment dismissed. Concur—Ross, Carro, Rosenberger and Ellerin, JJ.

Kupferman, J. P., dissents and would affirm for the reasons stated by Lang, J.