■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v AUGUSTIN JAIMAN, Appellant.—Judgment of the Supreme Court, New York County (Frederic S. Berman, J., at pretrial hearings; Jerome Hornblass, J., at jury trial and sentencing), rendered May 13, 1988, convicting the defendant of criminal possession of a weapon in the third degree and sentencing him, as a predicate felon, to an indeterminate term of imprisonment of 3½ to 7 years, reversed, on the law and the facts, the judgment vacated, the motion to suppress granted and the indictment dismissed. The matter is remitted to the trial court for the purpose of entering an order in favor of the accused pursuant to CPL 160.50 not less than 30 days after service of a copy of this court's order upon the respondent, with leave during this 30-day period to respondent to move and seek any further stay of the implementation of CPL 160.50 as in the interest of justice is required.

The fact that police officers in plain clothes saw defendant look towards their unmarked police vehicle, place his hand inside of his waistband and run into an abandoned building did not justify the officers' pursuit and seizure of defendant. *(People v Howard,* 50 NY2d 583 [1980], *cert denied* 449 US 1023 [1980]; *People v De Bour,* 40 NY2d 210 [1976]; CPL 140.50.) The gun discarded by the defendant during the chase and the bullets found on his person are suppressed as fruit of an unlawful seizure. (US Const Fourth Amend; NY Const, art I, § 12.)

The facts as elicited at the suppression hearing are essentially undisputed. On December 14, 1987 at about 6:40 P.M., Officers David Harris, Alfred Lent and two other officers were on patrol, in plain clothes in an unmarked vehicle, near 118th Street and Third Avenue, a known drug area. Their assignment was to detect and prevent possible street crimes.

As they approached an abandoned building on 118th Street, they observed defendant and two or three other persons standing near the top of the stoop. When the unmarked car came within about 20 feet of the building, the defendant and the others looked in the direction of the vehicle. Defendant then reached towards his waist with his right hand, shoved his hand into his waistband, turned and ran into the building. The others on the stoop also ran into the building. The officers saw neither a gun nor a bulge in the area of defendant's waistband.

The officers exited the car and pursued the group. While the others with him ran up a flight of stairs to the second floor landing, defendant ran along a dimly lit hallway on the first floor. Officer Lent was about 15 feet behind defendant, and Officer Harris was 6 to 8 feet behind Lent. At the suppression hearing, Officer Lent testified that towards the end of the hallway, appellant suddenly stopped and that when he did so, Lent heard the sound of a heavy metal object hitting the ground falling from the approximate point at which the defendant was standing. Defendant then turned around and slowly walked past Lent towards the exit. Lent continued towards the back of the hallway and down a staircase. On steps some 12 feet directly below where defendant had turned around, Lent discovered a loaded .38 caliber revolver. A door at the end of the first floor hallway was sealed shut. Meanwhile, Officer Harris stopped defendant in the hallway and frisked him, recovering seven bullets from defendant's right trousers pocket. Within seconds, Lent returned to the first floor hallway where he observed Harris holding seven bullets. When Lent asked Harris, "Where did you get the bullets", the defendant responded, "I got them from a friend." Defendant was arrested and stated, without being questioned, that he was on parole for a murder conviction. He also asked the officers how he could be arrested for possession of the gun when the gun had not been taken off of him.

On this appeal defendant challenges only the denial of his motion to suppress the gun and bullets as the product of an unlawful seizure. We note that this issue has been preserved for our review. (CPL 470.05 [2]; *People v West*, 56 NY2d 662 [1982].) By notice of motion, defendant sought to suppress physical evidence seized as the product of an unlawful arrest. At the combined *Mapp* and *Huntley* hearing, counsel for defendant stated that the *Mapp* hearing related to the suppression of the gun, although he noted that the gun was not found on defendant's person and argued that there was a paucity of evidence connecting defendant to it.

In evaluating the propriety of the police action, we must consider whether it was justified at its inception and whether it was reasonably related in scope to the circumstances giving rise to the encounter. *(People v De Bour*, 40 NY2d, *supra*, at 215; *People v Cantor*, 36 NY2d 106, 111 [1975].) Here we conclude that the objectively credible observations and beliefs of the police officers did not attain the level of "reasonable suspicion" of criminal activity or that the officers were in danger of physical injury, necessary predicates for the pursuit

and frisk of defendant. *(People v De Bour,* 40 NY2d, *supra,* at 223; *People v Sobotker,* 43 NY2d 559, 563-564 [1978]; *People v Lawrence,* 145 AD2d 375, 377 [1st Dept 1988], *lv granted* 73 NY2d 898 [1989].)

The officers did not act upon reliable confirmed information that a crime had occurred or was about to occur. Nor did they observe criminal conduct. Rather, they were confronted with conduct by defendant just as susceptible of an innocent interpretation as of a culpable interpretation. Defendant's glance at an unmarked car and at police officers who were not in uniform, placement of his hand inside the waistband of his trousers and flight were ambiguous at best. Here the police had, at most, a common-law right to inquire. *(People v De Bour,* 40 NY2d, *supra,* at 223.)* Even so, the person of whom such inquiry is made has a constitutional right not to respond and may walk, or even run away and without probable cause, the police may not pursue, search or seize such person. *(People v Howard,* 50 NY2d, *supra,* at 590; *People v Lawrence,* 145 AD2d, *supra,* at 377.)* Concur—Murphy, P. J., Carro, Rosenberger and Smith, JJ.