THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v McARTHUR NELSON, Appellant

We find unpersuasive the defendant's contention that the hearing court erred in denying his applications to suppress evidence. The testimony at the hearing demonstrated that the plainclothes police officers received a radio report of "shots fired" at a stated address. They promptly arrived at the scene and spoke to an identified witness at the location who confirmed the substance of the radio report and indicated that the shots came from the third floor. Wearing their police badges on their outer garments, the officers proceeded into the small vestibule of the building and immediately were confronted by the defendant and three other males who were attempting to exit. Upon seeing the officers, the four males turned around, slammed the inner vestibule door behind them, and fled back into the narrow hallway of the building. The officers identified themselves as police and instructed the four men to "freeze" and to stand against a wall in the hallway. As the defendant was being placed against the wall, he indicated that he had a shotgun concealed in the area of his waistband. The police recovered the weapon and frisked all of the men. The defendant subsequently was identified at the scene by the complainants, and additional physical evidence was recovered from his person and from a briefcase which he had been carrying.

Considering the foregoing events as a whole (see, *People v Chestnut*, 51 NY2d 14, *cert denied* 449 US 1018), including the nature of the radio report, the independent confirmation of that broadcast by an identified witness at the scene (cf., *People v Lawrence*, 145 AD2d 375), the flight of the defendant and his companions upon seeing the officers, the confined area in which the officers found themselves, the rapidly unfolding situation, and the great potential for danger, we find that there is ample evidence to sustain the hearing court's determination that the officers acted reasonably in detaining the defendant and the others as a precautionary measure to ensure their own safety (see, *People v Allen*, 73 NY2d 378; *People v Benjamin*, 51 NY2d 267; *People v Burgos*, 175 AD2d 211; *People v Davis*, 161 AD2d 602; *People v Ennis*, 158 AD2d 467). Indeed, as noted in *People v Allen (supra*, at 380), "[w]here, as here, police officers find themselves in a rapidly developing and dangerous situation presenting an imminent threat to their well-being, they must be permitted to take reasonable measures to assure their safety and they should

not be expected 'to await the glint of steel' before doing so *(People v Benjamin,* 51 NY2d, at 271, *supra)".* Furthermore, while the officers were also entitled to conduct a protective frisk under these circumstances, the frisk of the defendant was justified in any event by his spontaneous admission to possessing the shotgun. Of course, once the weapon was recovered, the police had probable cause to arrest the defendant *(see, People v Leung,* 68 NY2d 734; *People v Davis, supra).* Accordingly, we discern no basis in the record for disturbing the hearing court's determination *(see, People v Ennis, supra).*

Similarly unavailing is the defendant's claim that the sentence imposed by the court impermissibly penalized him for exercising his right to go to trial. There is absolutely no evidence in the record to support this assertion *(see, e.g., People v Pena,* 50 NY2d 400, *cert denied* 449 US 1087; *People v Aguilera,* 156 AD2d 698). While the challenged sentence is greater than that offered to the defendant at the close of the suppression hearing in return for a guilty plea to a single count of a lesser offense, it is firmly established that "[s]entences imposed after trial may be more severe than those proposed in connection with a plea" *(People v Norfleet,* 146 AD2d 812, 813; *see, People v Harris,* 162 AD2d 195). Moreover, while there is a substantial disparity between the defendant's sentence and that received by his accomplice, this disparity is attributable to the defendant's status as a persistent violent felony offender with a 25-year history of serious crime who was convicted of 10 felonies after this trial and who clearly was the architect of the instant criminal venture. By contrast, his accomplice apparently was a first-time felony offender who did not participate in the offenses to the same degree as the defendant and who entered a plea of guilty to a single count of a lesser offense as part of a negotiated agreement *(see, e.g., People v Taylor,* 155 AD2d 630). Hence, the defendant's contention that his sentence was prompted by vindictiveness on the part of the court is without merit. Thompson, J. P., Sullivan, Eiber and Copertino, JJ., concur.