■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DONALD RAMOS, Appellant. [608 NYS2d 256] —Appeal by the defendant from a judgment of the Supreme Court, Kings County (Feldman, J.), rendered May 17, 1990, convicting him of arson in the second degree (two counts), assault in the second degree (four counts), and reckless endangerment in the first degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress statements made by him to law enforcement officials.

Ordered that the judgment is affirmed.

According to the testimony credited by the hearing court, on April 26, 1990, at approximately 8:30 A.M., the defendant was confronted by, among others, Fire Marshals Philip Meagher and Christopher Biel in connection with two fires that had been set earlier· that morning in Brooklyn. One of the fires was at the apartment building in which the defendant and his family resided, located at 42 Hinsdale Street, and the other was at a building located at 193 New Jersey Avenue. The defendant was then questioned by Meagher and Biel in their vehicle. He made incriminating statements as to his involvement and that of his two brothers-in-law, Andre Sanchez and Miguel Rivera, in setting both fires because of a family dispute he was engaged in with certain residents of the building at 193 New Jersey Avenue. At some point during the questioning, the defendant was read his *Miranda* rights. At the conclusion of the questioning in the vehicle, the defendant was arrested and was ultimately taken to the 75th Precinct station house. Subsequently, sometime between 5:00 and 7:15 P.M., the defendant met with an Assistant District Attorney, who read him his *Miranda* warnings, whereupon the defendant immediately requested an attorney and all questioning ceased.

According to Biel, by approximately 9:30 P.M., he had been sitting with the defendant in an interview room at the 75th Precinct for approximately two hours. During this time, Biel, who was aware that the defendant had requested counsel, did not converse with the defendant, who was handcuffed to a chair. At that juncture, the defendant commented to Biel: "You must be tired", to which Biel responded: "I am, it's been a long day". The defendant then asked him: "What [do] you think is going to happen to me?", to which Biel responded: "I have no idea. It's not for me to decide". The defendant then asked Biel: "Well, what would you do if they scarred your daughter's face, then when you're not at home they come, they break your door, break your windows, everybody in the building knows who they are because they're all related, but nobody will go to the police. What am I to do for justice?" Biel did not respond to this statement in any manner. The defendant then asked him if anybody had been hurt, to which Biel responded: "Well, there were a few people that got injured". The defendant then stated: "Well, that's why I call[ed] the fire department. I didn't want anybody to get hurt real bad". After a brief pause in the conversation, Biel said: "[T]hat was a bad thing to do, and it's too bad you got [Rivera] and

[Sanchez] involved in this". The defendant responded: "Well that's why I asked for Legal Aid for them, I didn't want them to say something * * * stupid". Biel then said to him: "Well, [Sanchez] seems to be very loyal to you, and [Rivera], he also seems to be like a nice guy", to which the defendant responded: "I shouldn't have got them involved. They didn't do anything, I did it all". Biel then asked: "Well, why didn't you call the fire department for the fire at [193] New Jersey Avenue?", to which the defendant responded: "I didn't think it would be a big fire because I didn't have much gas left and [it] had a metal door".

At the conclusion of the hearing, the court granted suppression with respect to all the statements the defendant made to the marshals while being questioned in their vehicle, but denied suppression with respect to all of the statements he made during his conversation with Biel at the station house.

Contrary to the findings of the hearing court, we find that all of the statements made by the defendant after Biel had made reference to Sanchez and Rivera should have been suppressed, inasmuch as Biel's remarks during that particular portion of the conversation amounted to the "functional equivalent" of interrogation after the defendant had invoked his right to counsel (see, Rhode Is. v Innis, 446 US 291; People v Huffman, 61 NY2d 795, 797; People v Gonzales, 75 NY2d 938, 939, cert denied 498 US 833; People v Maerling, 46 NY2d 289, 302-303; see also, People v Lanahan, 55 NY2d 711, 713; People v Stoesser, 53 NY2d 648, 650; People v Tyler, 99 AD2d 537, 538).

Nevertheless, under the entirety of the circumstances leading up to Biel's reference to Sanchez and Rivera, we find that the defendant's statements at the precinct made prior thereto were spontaneous and, thus, properly admissible. Biel's answers to the questions and statements offered by the defendant up to that juncture were neutral and merely responsive in nature. Accordingly, Biel was not accountable for the unforeseeable, incriminating statements made by the defendant during the earlier stages of the conversation which the defendant had initiated (see, People v Rivers, 56 NY2d 476; People v Lynes, 49 NY2d 286; People v Kaye, 25 NY2d 139; see also, People v Dove, 176 AD2d 266, 267; People v Hampton, 129 AD2d 736, 737; People v Rios, 123 AD2d 404; People v Tyler, supra, at 538).

Moreover, the defendant's contention that all of the station house statements should have been suppressed on the basis that they were the product of "continuous interrogation" is

without merit *(see, People v McIntyre,* 138 AD2d 634, 637; *People v Steed,* 133 AD2d 433; *People v Mahoney,* 122 AD2d 815; *People v Glover,* 58 AD2d 814, 815; *cf., People v Chapple,* 38 NY2d 112, 115; *People v Anderson,* 178 AD2d 605; *People v Robertson,* 133 AD2d 355; *People v Jones,* 87 AD2d 761; *People v Johnson,* 79 AD2d 617; *People v Newson,* 68 AD2d 377).

In light of the foregoing determination with respect to the admissibility of the statements the defendant made to Biel prior to any reference by Biel to Sanchez and Rivera, and the strength of the evidence offered at trial concerning the defendant's exasperation regarding the aforementioned family dispute and his alleged appearances and activities at both locations immediately prior to the outbreak of both fires, we find that the improper admission at trial of certain of the defendant's statements to Biel was harmless beyond a reasonable doubt *(see generally, Arizona v Fulminante,* 499 US 279; *People v Sacha,* 177 AD2d 523).

The defendant's contention with respect to the adequacy of the court's instruction to the jury concerning motive is unpreserved for appellate review *(see,* CPL 470.05 [2]), and, in any event, is without merit *(see, People v Briggs,* 71 AD2d 685, 686-687).

We have examined the defendant's contention that the sentence imposed was excessive and constituted punishment for proceeding to trial and find it to be without merit *(see, People v Delgado,* 80 NY2d 780; *People v Suitte,* 90 AD2d 80; *see also, People v Pena,* 50 NY2d 400, 412, *cert denied* 449 US 1087; *People v Canute,* 190 AD2d 745; *People v Sherrod,* 181 AD2d 700; *People v Nelson,* 179 AD2d 784, 786; *People v Brown,* 157 AD2d 790, 792; *cf., People v Patterson,* 106 AD2d 520, 521). Balletta, J. P., Santucci, Krausman and Florio, JJ., concur.