People v Walton (2004 NY Slip Op 50944(U))

[*1]

People v Walton

2004 NY Slip Op 50944(U)

Decided on August 11, 2004

Supreme Court, Bronx County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 11, 2004

Supreme Court, Bronx County
THE PEOPLE OF THE STATE OF NEW YORK
against
LENWORTH WALTON, Defendant.
4395/2003

Peter J. Benitez, J.
Defendant is charged in the captioned indictment with Criminal Possession of a Weapon in the Third Degree and related offenses. He moved to suppress physical and statement evidence and a hearing was conducted before this court on May 14, 2004. At the hearing, the People called Police Officers Barnett and Daly, both of whom the court found credible. The defense did not call any witnesses. Subsequent to the hearing, defense counsel and the assistant district attorney submitted written memoranda of law in support of their positions. Based upon the testimony adduced at the hearing and a careful review of the applicable case law, the court makes the following findings of fact and conclusions of law.
FINDINGS OF FACT
Officer Barnett was assigned to the Bronx Anti-crime Unit on August 23, 2003, and was patrolling in an unmarked police vehicle in civilian clothes with his sergeant and his partner. At about 12:30 a.m. they received a radio call reporting shots fired at 4400 Wickham Avenue. When their vehicle reached within a half block of the location a male approached and told the officers that somebody had just fired several shots. The male gave the officers a description, which Officer Barnett did not remember, and said something about a car. While speaking to this individual, Officer Barnett saw defendant walking toward their vehicle from about a block away. Marked patrol cars then pulled up to the location, apparently in response to the call regarding shots being fired. Defendant then abruptly stopped, turned around, and walked in the direction from which he had come. Defendant had come within a half block of the location where the police vehicles were converging.
The anti-crime officers told the individual with whom they were speaking to talk to the uniformed officers, and then drove their vehicle in the direction of the man who had turned around apparently upon seeing the police presence. They saw defendant approach a car that was in a driveway of a private house. Two other males were also present. The police officers' vehicle proceeded past the parked vehicle, made a u-turn and pulled up behind the vehicle in the driveway. Officer Barnett rolled down his window and said, " Good evening. Police department. Can I talk to you for a second?" Officer Barnett saw that the trunk of the parked vehicle was [*2]open and saw defendant look down, turn around, walk to the trunk and place something in the trunk. Officer Barnett described defendant's actions as appearing to be "confused."
Officer Barnett exited his vehicle and approached defendant. The other officers also got out of the vehicle. None of the officers displayed their weapons. Officer Barnett asked defendant what his name was and received no response. Rather, defendant put his right hand next to his right pants pocket. Defendant's hand was not in his pocket, but it was touching the outside of the pocket. Officer Barnett asked defendant to take his hands away from his sides. Defendant complied by raising both his hands in the air. Defendant didn't raise his arms to a fully extended position, but rather only raised them halfway up. Officer Barnett asked defendant his name again and defendant responded by saying something that the officer characterized as "incoherent." Officer Barnett noticed that defendant's eyes were bloodshot and he could smell alcohol on defendant's breath.
Defendant then lowered both his arms. Officer Barnett reached out and blocked defendant's right arm with his arm before defendant's arm reached his side. Officer Barnett, fearing for the safety of himself and his partners due to the report of shots fired, then grabbed the outside of defendant's right pants pocket and felt a gun. Officer Barnett made it clear in his testimony that his hand did not accidently touch defendant's pocket as the officer was blocking defendant's lowering arm. Nor did defendant's lowering arm force the officer's hand against defendant's pocket. Rather, immediately upon blocking defendant's arm as it was lowering, Officer Barnett "grabbed" defendant's pants pocket and, feeling a gun, then reached into the pocket and recovered a loaded firearm from defendant's pocket. He then placed defendant under arrest and handed the firearm to Officer Daly. Defendant was transported to the 47th Precinct where he was read his Miranda rights by Officer Daly. Defendant waived his rights and provided a statement to police to the effect that he had obtained the gun for protection because he owned a body shop.
 CONCLUSIONS OF LAW
In People v. DeBour, 40 NY2d 210 (1976), the Court of Appeals identified four distinct levels of police intrusion and set forth the escalating degree of knowledge needed to justify each level. In the instant case, police responded to a report of shots fired and arrived at the scene within minutes where a civilian confirmed the report and stated that a car had been involved. Officer Barnett observed defendant who was walking toward his police vehicle suddenly reverse his direction upon the arrival of marked patrol cars and walk over to a parked car. Defendant's presence in close proximity to the scene of the reported shooting, minutes after the radio call, coupled with his evasive conduct, provided an objective basis for the officers to approach him for the purpose of requesting information. See People v. Adams, 217 AD2d 634 (2nd Dept. 1995); People v. Grey, 134 AD2d 613 (2nd Dept. 1987).
When Police Officer Barnett stated to defendant, "Good evening. Police Department. Can I talk to you for a second?", defendant looked down, walked around and appeared to place something in the trunk in a manner which Officer Barnett described as "confused." At this point, Officer Barnett and his partners exited their vehicle to speak to defendant. Their weapons were not drawn, defendant was not physically restrained in any way, and no accusatory questioning occurred. Rather, defendant was merely asked his name. Defendant, however, did not respond, but rather put his hand on the outside of his pants pocket. [*3]Accordingly, Officer Barnett's request to defendant to take his hands away from his sides was a minimally intrusive measure designed simply to insure the officer's safety. See People v. Stevens, 255 AD2d 145 (1st Dept. 1998); People v. Oppedisano, 176 AD2d 667 (1st Dept. 1991). The court finds that up until this point, the officers continued to be engaged in a lawful request for information.
Whether or not the subsequent grabbing of defendant's pocket and retrieval of the weapon constituted authorized police conduct turns upon whether or not Officer Barnett's actions were reasonable under the circumstances that existed. As set forth in DeBour, supra, an officer's right to stop and frisk an individual is permissible where the officer has a reasonable suspicion that an individual has, or is about to commit a crime. In such an instance, the officer may forcibly detain the individual for questioning and/or frisk the individual if the officer reasonably believes the person is armed. This right is derived from Criminal Procedure Law Section 140.50 (3) which provides "When stopping a person... a police officer... reasonably suspects that he is in danger of physical injury, he may search such person for a deadly weapon or any instrument, article or substance readily capable of causing serious physical injury and of a sort not ordinarily carried in public places by law-abiding persons."
When assessing the reasonableness of the police conduct, it must be viewed in the context of the totality of the circumstances. People v. Benjamin, 51 NY2d 267 (1980). Therefore, while a radioed tip, standing alone, may not rise to the level of reasonable suspicion justifying a stop and frisk, it may be considered in conjunction with other supportive factors which rapidly develop on the scene. People v. Benjamin, supra.
Taken collectively, the totality of the circumstances may provide police with ample reasonable suspicion justifying a frisk. Although certainly not exhaustive, some of the factors which may combine to provide a lawful predicate for a frisk of defendant are the nature of the radio report, the independent confirmation of that broadcast by an identified witness at the scene, whether defendant matched a description, defendant's presence in close time and proximity to the incident, defendant's flight upon seeing the officers, defendant's demeanor or physical gestures, and the nature of defendant's response to the officer's initial inquiry. See e.g., People v. Stroller, 42 NY2d 1052 (1977); People v. Thompson, 219 AD2d 548 (1st Dept. 1995); People v. Adams, 217 AD2d 634 (2nd Dept. 1995); People v. Nelson, 179 AD2d 784 (2nd Dept. 1992).
In the instant case, while no single factor standing alone can be cited as providing justification for the officer's actions, the developing sequence of events provided Officer Barnett with reasonable suspicion to believe that defendant might be armed. Minutes after receiving and confirming a report of shots fired, Officer Barnett had already observed defendant in close proximity to the scene reversing his direction upon noticing police cars and acting in a confused manner. Defendant appeared to be intoxicated and did not respond to repeated requests for his name. Rather, defendant placed his hand on his pants pocket. Additionally, police had been told that a car was connected to the shooting and had observed defendant stopping by a parked car and possibly placing something in its trunk. Accordingly, when defendant began to lower his arms contrary to Officer Barnett's instruction to keep them away from his sides, the officer reasonably feared that defendant might be reaching for a gun. His actions of blocking defendant's arm and grabbing the pants pocket, therefore, were reasonable and justified, and the subsequent recovery of the weapon, lawful.
[*4]
Moreover, even if the court were to conclude that the escalating events failed to rise to the level of reasonable suspicion that defendant possessed a gun, it would nonetheless uphold Officer Barnett's action in grabbing the outside of defendant's pocket as a minimally intrusive self-protective measure justified by all the facts known to him at that moment as well as defendant's conduct. As noted, the officers did not forcibly stop the defendant. Rather, their conduct at all times was limited to a request for information. As the officers were investigating reports that shots had been fired it was reasonable for Officer Barnett to be concerned for his own safety and that of his fellow officers. The defendant's actions and his placing his hand against his pocket and returning his hand to that pocket after being told to keep his hands away from his sides, clearly justified the officer's fear that a weapon may be in that pocket. Accordingly, it was reasonable for the officer to engage in the limited intrusion of grabbing the outside of the pocket. See People v. Samuels, 50 NY2d 1035 (1980); People v. Giles, 223 AD2d 39 ( 1st Dept. 1996).
Defendant has attempted to distinguish many of the cases relied upon by the People (and cited by the court in this decision) on the ground that they upheld a frisk in cases where defendant appeared to be reaching for his waistband, a well-known location for a gun. Additionally, defendant asserts that, unlike in the cases cited by the People, defendant in this case did not match a physical description. While it is true that no description of the alleged shooter was provided at this hearing, the court reiterates that it is the totality of the circumstances which is evaluated in assessing reasonable suspicion, rather than any single factor such as a description. People v. Benjamin, supra. Moreover, the court is unwilling to find Officer Barnett's fear for his safety any less reasonable merely because he suspected defendant might be reaching for a gun in his pocket rather than his waistband.
Accordingly, the court finds that the recovery of the weapon from defendant's person was lawful and that his arrest was supported by probable cause. His subsequent statements to police were given voluntarily after being advised of and waiving his Miranda rights. Defendant's motions to suppress physical and statement evidence are therefore denied in all respects.
This opinion constitutes the decision and order of the court.
Dated: August 11, 2004
 Bronx, New York ______________________
 PETER J. BENITEZ, J.S.C.